# Illinois Official Reports

## Supreme Court

---

### *People v. Simms*, 2018 IL 122378

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DARRYL SIMMS, Appellee. |
| Docket No. | 122378 |
| Filed<br>Rehearing denied | December 13, 2018<br>January 28, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Du Page County, the Hon. Daniel P. Guerin, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Erin M. O'Connell, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>James E. Chadd, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Fletcher P. Hamill, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellee. |

CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.


**OPINION**

¶ 1      In this appeal, the State contends that neither section 122-5 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-5 (West 2014)) nor section 13-217 of the Code of Civil Procedure (Code) (735 ILCS 5/13-217 (West 1994)) authorizes "reinstatement" of petitioner's withdrawn postconviction petition, that petitioner's motion to reinstate should, instead, be treated as a motion for leave to file a new, successive petition that must meet the cause-and-prejudice test. Referencing only section 122-5 of the Act, petitioner submits, broadly, that "a trial judge has discretion to allow a postconviction petitioner's motion to reinstate his petition after he has voluntarily withdrawn it." In this case, the appellate court suggested that section 13-217 of the Code *does* apply, and the court acknowledged that petitioner had not filed his motion to reinstate within any recognized statutory time limitations; however, the appellate court concluded that the trial court erred in denying petitioner's motion to reinstate as untimely without first considering whether petitioner alleged facts showing that the delay in refiling was not due to his culpable negligence. 2017 IL App (2d) 141251, ¶ 32. We reverse the judgment of the appellate court.

¶ 2                          STATUTES INVOLVED
¶ 3      Multiple statutes are, or could be, relevant to the disposition of this case. Quoting all, in their entirety, at the outset would not likely inure to a better understanding of their interrelationship without the context provided by cases. At this juncture, a summary of the content of the principal statutes will suffice.

¶ 4      Subsection (c) of section 122-1 of the Act (725 ILCS 5/122-1(c) (West 2014)) establishes the statutes of limitation for filing an original postconviction petition, with a common, single statutory excuse for late filing, *i.e.*, that the delay in filing was not due to a petitioner's culpable negligence. Subsection (f) of that section, enacted subsequent to the other provisions of the Act we will discuss,[1] makes plain that only one petition may be filed without leave of court and claims not raised in that petition or an amendment thereof must be subject to the cause-and-prejudice test. *Id.* § 122-1(f). An older provision of the Act, section 122-3, provides that any claim not presented in an original or amended petition is "waived." *Id.* § 122-3. Section 122-5 of the Act addresses proceedings on petitions that have cleared first-stage scrutiny, speaking first to discretionary withdrawal of petitions and second to the discretion afforded courts with respect to pleadings pertinent to pending petitions. *Id.* § 122-5. Finally, section 13-217 of the Code sets the temporal limitations for refiling in civil cases after an action is

---

[1]Following our holding in *People v. Pitsonbarger*, 205 Ill. 2d 444 (2002), the General Assembly adopted the cause-and-prejudice test in the Act by adding section 122-1(f). See Pub. Act 93-493 (eff. Jan. 1, 2004).

"voluntarily dismissed," providing that a new action may be commenced within one year of dismissal or within the remaining period of limitation, whichever is greater. 735 ILCS 5/13-217 (West 1994).

¶ 5                                                    BACKGROUND

¶ 6        Following a bench trial in the circuit court of Du Page County, the petitioner, Darryl Simms, was found guilty of murder (Ill. Rev. Stat. 1985, ch. 38, ¶ 9-1(a)), aggravated criminal sexual assault (*id.* ¶ 12-14(a)), criminal sexual assault (*id.* ¶ 12-13(a)), armed robbery (*id.* ¶ 18-2), home invasion (*id.* ¶ 12-11(a)), and residential burglary (*id.* ¶ 19-3(a)). Petitioner waived his right to a jury in the sentencing phase, and the circuit court found petitioner eligible for the death penalty on the basis of multiple felony-murder convictions (*id.* ¶ 9-1(b)(6)). Finding no mitigating factor sufficient to preclude imposition of the death penalty, the judge sentenced petitioner to death.

¶ 7        This court affirmed petitioner's convictions but remanded for resentencing because the trial court had improperly allowed victim impact statements during sentencing. *People v. Simms*, 121 Ill. 2d 259, 275-76 (1988). On remand, petitioner elected to be sentenced by a jury, which ultimately concluded there were no mitigating factors sufficient to preclude a sentence of death. In the ensuing appeal, this court again remanded the cause for resentencing, this time due to an improper jury instruction. *People v. Simms*, 143 Ill. 2d 154, 171-72 (1991). Upon remand, petitioner was sentenced to death a third time, a jury again finding petitioner eligible for death and concluding there were no mitigating factors sufficient to preclude the imposition of the death penalty. This court affirmed on appeal. *People v. Simms*, 168 Ill. 2d 176, 182 (1995).

¶ 8        On November 14, 1995, petitioner filed a postconviction petition. With leave of court, he filed an amended postconviction petition on May 21, 1997. The circuit court ultimately dismissed the amended petition without an evidentiary hearing. On appeal, this court affirmed the dismissal of most of petitioner's claims but reversed the dismissal of claims alleging perjury, remanding the cause for an evidentiary hearing. *People v. Simms*, 192 Ill. 2d 348, 392, 430 (2000).[2]

¶ 9        In January 2003, then-Governor George Ryan commuted all death sentences to life imprisonment. However, the death penalty remained a statutorily authorized disposition. At the time of the commutations, petitioner's postconviction petition—which sought as relief a new trial—was still pending.

¶ 10       On April 30, 2004, attorneys for the State and the petitioner appeared in that postconviction proceeding. The parties and court first acknowledged receipt of voluminous records from the Department of Corrections—disciplinary reports—which the State intended for use at any subsequent sentencing hearing. An attorney for the State noted: "[T]hey won't be relevant for

---

[2]This court concluded: "Having reviewed the entire transcript, we are unable to conclude there exists no reasonable likelihood that the allegedly false testimony would not have affected *the jury's determination to impose the death penalty*. Accordingly, we hold that the allegations in defendant's amended petition were sufficient to make a substantial showing of a constitutional violation and to require an evidentiary hearing to determine if the violation did in fact occur. The circuit court's dismissal of these claims without an evidentiary hearing was improper." (Emphasis added.) *Simms*, 192 Ill. 2d at 392. Petitioner, of course, would no longer face the death penalty.

these issues." Petitioner's attorney then announced that she had been "having some discussions with Mr. Simms[;] depending on the outcome of those discussions and our research, we may not proceed to that evidentiary hearing." The State asked for a status hearing as soon as possible, referencing witnesses who had testimony relevant to the outcome. The parties agreed that petitioner would not have to be present for the next scheduled hearing date.

¶ 11    On June 11, 2004, the parties again appeared on this matter. At that time, petitioner's attorney advised the court as follows: "I had conversations with my client. And our position at this point is that we do plan to withdraw claims in the post-conviction petition relating to the perjury and *Brady* violation. I talked to [the attorney for the State]. What we'd like to do is get a written affidavit from Mr. Simms that this is what he wants to do." The court inquired: "And then, just so I'm clear, are you telling me that this is going to be the end, basically?" Counsel confirmed that the claims this court had remanded for an evidentiary hearing would be withdrawn. Counsel thereafter responded affirmatively when the court asked if petitioner would be "withdrawing what's left." The court then asked if petitioner was to be present at the next, concluding hearing, to which counsel responded, apparently addressing a concern of the State: "No. I talked to the State. And I understand their position. They're wanting a written affidavit from him. He doesn't want to be up here unless he has to be."

¶ 12    On July 7, 2004, petitioner filed a pleading titled "Withdrawal of Claims" in which he expressed a desire to withdraw his remaining postconviction claims.[3] In that document, petitioner stated his understanding that, after withdrawing the claims, no evidentiary hearing would take place as ordered by this court. Petitioner further stated that he was withdrawing the claims freely and voluntarily and after having duly consulted with his postconviction counsel, a staff attorney with the Capital Litigation Division, Office of the State Appellate Defender.

¶ 13    On that date, upon counsel's presentation of the document evincing petitioner's intent to withdraw his claims, the court yet again inquired, "Is there anything left? Counsel stated there was not. As a matter of housekeeping, the court inquired as to the disposition of "the enormous amount of material that came to me from the Illinois Department of Corrections," which, obviously, would be relevant only if future proceedings were contemplated in this matter. The State advised the court that the State had subpoenaed those documents in the event the matter proceeded to a sentencing hearing. Counsel for petitioner then stated there was no longer a need for that material. The court advised the parties: "So I think, what I'm going to do is just have the material destroyed, if that's okay with everybody." Both parties agreed.

¶ 14    Later the same day, the circuit court entered an order stating: "Petitioner wishing to withdraw Claims III, IV and V of his Amended Petition," those "[c]laims *** are withdrawn, no further proceedings remain pending in this court." In that order, no reference was made to voluntary dismissal, contemplated repleading or potential reinstatement at a later date, or any section of the Code pertaining to same.

¶ 15    Seven years later, on October 18, 2011, petitioner filed a *pro se* petition pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2010)), seeking reinstatement of his postconviction petition. In his petition, he argued that the July 7, 2004, order disposing of his

---

[3]In his subsequently filed *habeas corpus* case, petitioner admitted that he withdrew his petition because he did not want to jeopardize the commutation of his sentence. *Simms v. Acevedo*, 595 F.3d 774, 776 (7th Cir. 2010).

remaining postconviction claims was void because (1) the State coerced him into withdrawing his petition by stating that it would again seek the death penalty upon retrial if he succeeded in his postconviction challenge, prompting him to make a "Hobson's choice" under duress; (2) his postconviction counsel and the court failed to adequately admonish him regarding his options, the current law, and the likely course of death penalty jurisprudence; and (3) the procedure by which the withdrawal took place was generally unlawful. The circuit court granted the State's motion to dismiss the petition, finding it untimely. In so ruling, the circuit court stated:

> "[Y]ou're making an argument as to why you withdrew your claims because you were under duress faced with this choice that you talked about in the petition and that you were persuaded to withdraw the claims because of fraud or duress. And—I understand what you're saying, but, as the State pointed out, that's—*you're not arguing that's the basis why you never got around to filing this for seven years*. Duress and fraud, those are exceptions as to why the statute should be extended out to file a [section 2-]1401 petition. And *I don't see anything in your petition which would indicate why you never filed it for so long*. So I don't think that those are reasons to extend the statute of limitations.
>
> \*\*\* I find that the July 7th, 2004, order from Judge Anderson was not void; and thus your petition is not timely. And I also find that you don't set forth the requisite fraud or duress reasons to give you an extension of time to file it. So I don't find any basis to allow this to go forward, so I'm going to deny your petition. And, I suppose, I'm granting the State's Motion to Dismiss it, technically speaking."[4] (Emphases added.)

¶ 16    On appeal, the Office of the State Appellate Defender sought to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). In a summary order, the appellate court affirmed the judgment of the circuit court and granted counsel's motion to withdraw, finding that (1) a due-process violation did not *ipso facto* imply a void judgment and (2) no other exception to section 2-1401's two-year limitations period applied.

¶ 17    On July 1, 2014, petitioner filed a motion to reinstate his postconviction petition. In his motion, petitioner reasserted the postconviction claims that this court had determined merited an evidentiary hearing. On July 22, 2014, the trial court ordered the State to file a response to the motion and ordered petitioner to, thereafter, file a reply. The State argued in its response that the trial court should deny petitioner's motion because, under *People v. English*, 381 Ill. App. 3d 906 (2008), and *People v. Macri*, 2011 IL App (2d) 100325, a postconviction petition could not be reinstated more than one year after it was voluntarily withdrawn. In his reply,

---

[4]Effective July 1, 2011, the death penalty was abolished in Illinois. See Pub. Act 96-1543 (eff. July 1, 2011) (adding 725 ILCS 5/119-1). A little over three months later, petitioner filed his section 2-1401 petition seeking reinstatement of his withdrawn postconviction petition. Obviously, from the timing of the filing and the content of the petition itself, petitioner's "duress," or "cause," for not refiling or seeking reinstatement earlier—the possibility of being retried and again sentenced to death—was removed after the abolition of the death penalty. That potential for another sentence of death and petitioner's strategic decision not to risk that sentencing outcome were clearly the reasons petitioner did not seek reinstatement for seven years after withdrawing the petition—not ignorance of available procedures nor lack of access to available legal resources.

petitioner argued, *inter alia*, that his situation was distinguishable from *Macri* because the supreme court had remanded some of his postconviction claims for an evidentiary hearing and because section 122-5 of the Act allowed the circuit court to extend the time for filing pleadings. On September 8, 2014, the circuit court denied petitioner's motion to reinstate as untimely, relying upon the cases cited by the State. The circuit court denied petitioner's motion to reconsider. The appellate court granted petitioner's motion for leave to file a late notice of appeal.

¶ 18    Before the appellate court, petitioner argued that this case is not governed by section 13-217 of the Code. 2017 IL App (2d) 141251, ¶ 23. Rather, petitioner asserted that statute simply limits the trial court's discretion with respect to a motion to reinstate filed within one year after the withdrawal, in that the trial court *must* grant such a motion. Noting that section 122-5 of the Act gives the circuit court discretion to " 'extend[ ] the time of filing any pleading other than the original petition' " (*id.* (quoting 725 ILCS 5/122-5 (West 2004))), petitioner suggested that discretion applied to his filing, an attempt to reinstate his petition 10 years after he withdrew it.

¶ 19    For its part, adopting the temporal limitations of section 13-217 of the Code (735 ILCS 5/13-217 (West 2014)) and applying them in this postconviction context, the State accepted the proposition that a postconviction petitioner who voluntarily withdraws his petition "may commence a new action within one year or within the remaining period of limitation, whichever is greater." However, the State argued that petitioner had cited no authority for the proposition that there is an infinite extension of the limitations period for a petitioner who voluntarily withdraws or dismisses a postconviction petition. 2017 IL App (2d) 141251, ¶ 17.

¶ 20    After examining appellate decisions addressing pertinent, but diverse, circumstances,[5] the appellate court accepted the proposition that section 13-217 could be utilized in this context; however, the court acknowledged "the one-year period is not applicable here." *Id.* ¶ 32. With respect to statutory provisions that *would* apply in this case, the court concluded:

"[S]ection 122-1(c) allows a defendant to bypass these time limitations by 'alleg[ing] facts showing that the delay was not due to his or her culpable negligence.' [Citation.] Logically, the trial court must have the discretion to determine whether this standard has been met in the motion to reinstate, which also corresponds to the discretion given to the trial court in section 122-5 to extend 'the time of filing any pleading other than the original petition.' 725 ILCS 5/122-5 (West 2014); see *York*, 2016 IL App (5th) 130579, ¶ 30. This conclusion is consistent with the language of the Postconviction Act and the Code, and it is also in harmony with the analyses in *English*, *Macri*, and *York*. Accordingly, here the trial court erred in denying defendant's motion to reinstate as untimely without considering whether defendant alleged facts showing that the delay was not due to his culpable negligence. See *York*, 2016 IL App (5th) 130579, ¶ 27. We therefore reverse the trial court's denial of defendant's motion to reinstate his postconviction petition, and we remand for further proceedings during which the trial

_____

[5]The appellate court would ultimately find the result of its analysis consistent with those of *English*, 381 Ill. App. 3d 906, *Macri*, 2011 IL App (2d) 100325, and *People v. York*, 2016 IL App (5th) 130579, and reject the jurisdictional analysis of *People v. Harris*, 2016 IL App (1st) 141778.

- 6 -

court shall exercise its discretion to determine if defendant sufficiently alleged that the delay in filing the motion was not due to his culpable negligence." *Id.*

In a footnote, the appellate court acknowledged that the time limitations of the Act "do not apply if the defendant claims actual innocence." *Id.* ¶ 32 n.2 (citing 725 ILCS 5/122-1(c) (West 2014)).

¶ 21                                    ANALYSIS

¶ 22     Before this court, the State first argues that postconviction petitioners may not invoke section 13-217 of the Code "because its one-year grace period is inconsistent with the Act's six-month deadline." As a fallback position, the State contends: "[E]ven if the civil provision applied to postconviction petitioners, it provides at most a one-year grace period. At a minimum, after that deadline has passed, any new petition must be considered successive." Petitioner first asserts, broadly, that section 13-217 "is not relevant to the issue in this case." He states that section 13-217, if applied, would improperly limit a judge's discretion, "making it impossible for the judge to deny an attempt to refile a pleading within a year of it being withdrawn." Seemingly deferring to the appellate court's decision in *English*, petitioner states: "It may be *** that section 13-217 applies to a motion to reinstate a post-conviction petition filed within one year of the petition having been withdrawn. [Citation.] If that is the case, then a judge has no choice but to allow a petitioner to refile his petition within one year of it having been withdrawn." However, he reasons that "the judge had discretion to deny" *his* petition "because the motion to reinstate in this case was not filed within one year of the petition being withdrawn."

¶ 23     Obviously, petitioner's true concern is for a finding that judges in this circumstance have unlimited discretion to *allow* reinstatement or refiling for someone, like him, who has not abided by any prescribed statutory limitations. In considering this issue, we believe it instructive to first discuss some of the appellate cases that have addressed this somewhat unusual circumstance, *i.e.*, withdrawal of a postconviction petition.[6]

¶ 24     One such case—and the first we will summarize—is *English*, 381 Ill. App. 3d 906. In *English*, "defendant's counsel filed a motion for voluntary dismissal of the postconviction petition, requesting that the court dismiss the petition 'without prejudice,' " and the circuit court granted that motion. *Id.* at 907. Within one year of that dismissal—with one day to spare—English filed a motion to reinstate and amend that postconviction petition. The circuit court denied his motion. On appeal, the appellate court concluded:

> "Section 13-217 provides that a plaintiff who voluntarily dismisses his action 'may commence a new action within one year *** after the action is voluntarily dismissed by the plaintiff.' 735 ILCS 5/13-217 (West 1994). A postconviction petition timely filed within one year of voluntarily withdrawing an initial petition under section 13-217 should not be dismissed.

---

[6]In most cases, petitioners choose to amend existing petitions. Supplementation with additional claims is, of course, an option after a petition clears the first stage. It is obvious why this petitioner chose to withdraw *his* petition, but in other cases the motivation for withdrawal is rarely, if ever, discussed.

Here, the trial court granted defendant's motion to voluntarily dismiss his initial postconviction petition on August 6, 2003. On August 5, 2004, defendant moved to reinstate and amend that petition. His motion was filed within one year of the voluntary withdrawal; it should have been allowed. We remand the cause to allow the trial court to reinstate the original postconviction petition, with amendments, and treat it as an initial petition." *Id.* at 910.

¶ 25    A principal basis for the appellate court's conclusion was what it considered an analogous procedural construct addressed by this court in *People v. McClure*, 218 Ill. 2d 375 (2006). There, section 2-118.1(b) of the Illinois Vehicle Code (625 ILCS 5/2-118.1(b) (West 2002)) was at issue, a provision governing proceedings in which rescission of statutory summary suspension is sought. *McClure*, 218 Ill. 2d at 378. Section 2-118.1(b) of the Vehicle Code states that "hearings shall proceed in the court in the same manner as in other civil proceedings." 625 ILCS 5/2-118.1(b) (West 2002). From that language, this court concluded that summary suspension hearings—being "civil in nature"—"must be subject to the provisions of the Code of Civil Procedure." *McClure*, 218 Ill. 2d at 382. Specifically, this court found that section 13-217 of the Code was one of those importable provisions—indeed, that its incorporation into summary suspension proceedings was *mandatory*, as the legislature's directive, that matters " '*shall* proceed in the court in the same manner as in other civil proceedings,' " left no doubt that section 13-217 must apply. (Emphasis added.) *Id.* "The fact that [section 2-118.1(b)] contemplates both a limitations period and a savings clause does not render it ambiguous. Indeed, these provisions are not mutually exclusive: a limitations period and a savings clause can exist simultaneously without creating a contradiction." *Id.* at 388.

¶ 26    The appellate court in *English* noted that the Act—the proceedings of which are also " 'civil in nature' " (*English*, 381 Ill. App. 3d at 909 (quoting *People v. Johnson*, 191 Ill. 2d 257, 270 (2000)))—similarly provides that the circuit court may, " 'in its discretion,' " enter an order allowing various amendatory and filing options " 'as is generally provided in civil cases' " (*id.* at 908 (quoting 725 ILCS 5/122-5 (West 2004))). The court acknowledged that the Code cannot conflict with provisions of the Act (*id.* at 909); however, the court noted that "the Code can be looked to for guidance if the Act is silent concerning a procedural matter" (*id.* at 910). The *English* court provided a "*Cf.*" citation of *McClure* for the proposition that "[v]oluntary withdrawal of a postconviction petition is equivalent to a voluntary dismissal in a civil case" (*id.* at 909) and followed that thread to its conclusion that, given the facts before it—including an order providing for voluntary dismissal "without prejudice"—procedural recourse to section 13-217 applied.

¶ 27    Three years after *English*, the Appellate Court, Second District, rendered its decision in *Macri*, 2011 IL App (2d) 100325. In *Macri*, the defendant filed a postconviction petition that remained pending for almost eight years before he "voluntarily withdrew" the petition. Almost six years later, he filed a "Motion to Reinstate Post-Conviction Petition" and a "Supplemental Petition for Post-Conviction Relief." Nowhere in the petition did the defendant profess that he was actually innocent. The trial court denied the motion. *Id.* ¶ 3.

¶ 28    On appeal, the defendant contended that his "Supplemental Petition for Post-Conviction Relief" was a " 'new original petition,' and, because the trial court failed to rule on the merits of the petition within 90 days, his 'new original petition' must be remanded for stage-two

proceedings under the [Act]." *Id.* ¶ 4. The *Macri* court discussed the circumstances the appellate court had addressed in *English* and differentiated those from Macri's:

> "Here, defendant did not move to reinstate his petition within one year after it was voluntarily withdrawn. Rather, defendant waited six years after the petition was withdrawn, which was well outside of the limitations period delineated in section 122-1(c) of the Act, before seeking to refile it. Thus, even assuming that a petition sought to be refiled beyond a year but within the limitations period must be automatically reinstated, defendant was not entitled to have his petition automatically reinstated and treated as an original petition." *Id.* ¶ 8.

In the course of a brief analysis affirming the judgment of the circuit court, the appellate court acknowledged the discretion afforded a trial court to allow additional pleadings under section 122-5 of the Act but noted that the defendant had not argued that the trial court had abused its discretion in denying his motion. *Id.* ¶ 9. The appellate court observed:

> "[D]efendant argues only that his 'Supplemental Petition for Post-Conviction Relief' must be treated as an original petition. Under defendant's view, once a defendant has voluntarily withdrawn a petition, that defendant may file a subsequent petition at any time without leave of the court and, when that petition is filed, it automatically is treated as an original petition. This simply is not so. Only if the trial court allowed defendant to reinstate his petition would his petition have been treated as an original petition." *Id.*

From the foregoing discussion, it is clear that the *Macri* court did not unequivocally accept the notion that a defendant who had "voluntarily withdrawn" his postconviction petition had the right to "automatic reinstatement" of his original petition within one year of withdrawal. However, the *Macri* court did, apparently, believe that a court *could*, in its discretion, allow reinstatement, and treatment as an original petition, without identifying any time limitations on reinstatement.

¶ 29    The remaining two cases the appellate court in this case discussed as significant were *People v. Harris*, 2016 IL App (1st) 141778, and *People v. York*, 2016 IL App (5th) 130579.

¶ 30    In *Harris*, the circuit court granted the defendant's "motion to withdraw" his initial postconviction petition. Within 30 days, the defendant moved to vacate that order. The court denied that motion, and the defendant did not appeal. Then, less than a year after the initial petition was withdrawn, the defendant filed a "motion to refile and reinstate" the initial petition. *Harris*, 2016 IL App (1st) 141778, ¶ 1. At a subsequent hearing, where the procedural status of the case was discussed, the circuit court concluded the proceeding by reiterating that its prior order denying the "motion to vacate" would stand. *Id.* ¶ 10. The defendant then filed a motion for leave to file a late notice of appeal, which was granted, and only after that did the circuit court deny the defendant's "motion to refile and reinstate." *Id.* ¶ 11.

¶ 31    Given that specific procedural scenario, the appellate court concluded that the circuit court lost jurisdiction "to address any matter in this case 30 days after it denied defendant's motion to vacate." *Id.* ¶ 24. It noted that the defendant's notice of appeal from that order was not timely filed. The court continued: "Furthermore, the trial court was without jurisdiction to address defendant's motion to refile and reinstate and that order should be vacated." *Id.* The appellate court noted—apparently with respect to a defendant who had *not* otherwise filed a prior motion to vacate an order granting voluntary withdrawal—that its "determination does not interfere in a defendant's ability to refile his postconviction petition within one year." *Id.* ¶ 22. So, it would

- 9 -

seem, barring the denial of a *prior* motion to vacate or refile, the appellate court accepted the applicability of section 13-217 in this context.[7]

¶ 32    In *York*, the defendant "voluntarily withdrew" his petition after it was docketed for second-stage proceedings. *York*, 2016 IL App (5th) 130579, ¶ 1. Sixteen months later, he filed a new *pro se* petition, raising the same issue he raised in his earlier petition and asking the court to " 'set aside the withdrawal' " of his earlier petition. *Id.* The trial court summarily dismissed the petition, providing two alternative bases for its ruling: (1) if viewed as a successive petition, the court found that the defendant did not allege facts establishing cause and prejudice, and (2) if viewed as a nonsuccessive petition, the court found that it was not filed timely. The defendant appealed, arguing that (1) the petition was not a successive petition and (2) the circuit court erred in dismissing it at the first stage on the basis of untimeliness. *Id.*

¶ 33    The appellate court first considered the discretion afforded a circuit court under section 122-5 of the Act in "allowing 'amendment of the petition or any other pleading, or as to pleading over, or filing further pleadings, or extending the time of filing any pleading *** as shall be appropriate, just and reasonable[,] and as is generally provided in civil cases.' " *Id.* ¶ 27 (quoting 725 ILCS 5/122-5 (West 2012)). Citing *English*, 381 Ill. App. 3d at 909, the appellate court then asserted that the "voluntary withdrawal of a postconviction petition is akin to the voluntary dismissal of a civil action under the Code of Civil Procedure" and that section 13-217 of the Code "allows a plaintiff to refile a voluntarily dismissed action within one year after the action is dismissed *or* within the original limitations period for filing the action." (Emphasis in original.) *York*, 2016 IL App (5th) 130579, ¶ 27 (citing 735 ILCS 5/13-217 (West 1994)). Further, the appellate court observed that "[t]he limitations period under the Post-Conviction Hearing Act in this case is three years from the date of conviction '*unless* the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.' " (Emphasis in original.) *Id.* (quoting 725 ILCS 5/122-1(c) (West 2012)). Having laid that analytical groundwork, the appellate court concluded:

> "A logical reading of the two provisions together leads us to conclude that a defendant seeking to reinstate or refile a voluntarily withdrawn petition is subject to the same rule—that is, a defendant seeking to reinstate a voluntarily withdrawn petition after more than one year must be given the opportunity to demonstrate that the delay was not due to his culpable negligence." *Id.*

¶ 34    In so holding, the court commented on aspects of the State's position with which the court disagreed. First, the court believed that to accept the State's position would be to "put many defendants in a worse position than they would be in if they did not file a timely petition in the first place," because "first-stage dismissal on the grounds of timeliness is not permitted under the *** Act"; rather, it is " 'an affirmative defense [that] can be raised, waived, or forfeited, by the State' " during second-stage proceedings. *Id.* ¶ 28 (quoting *People v. Boclair*, 202 Ill. 2d 89, 99, 101 (2002)). The appellate court noted that, by the second stage, a defendant would

---

[7]The *Harris* court cited this court's decisions in *People v. Johnson*, 191 Ill. 2d 257, 270 (2000), and *People v. Clements*, 38 Ill. 2d 213, 215 (1967), in asserting that this court "has determined the one-year savings clause set forth in section 13-217 of the Code applies to postconviction proceedings." *Harris*, 2016 IL App (1st) 141778, ¶ 22. Neither case lends direct support to that proposition.

"have the assistance of counsel in alleging and presenting to the court any facts and circumstances to show that the delay was not due to the defendant's culpable negligence." *Id.*

¶ 35    Beyond that, the court found "an additional reason" to reverse the circuit court's order dismissing the defendant's petition:

> "Although not raised by either party, section 122-5 explicitly grants postconviction courts the discretion to extend 'the time of filing any pleading other than the original petition.' 725 ILCS 5/122-5 (West 2012). Although he captioned his pleading as a postconviction petition, the defendant expressly asked the court to reinstate the previous petition (or, in the defendant's words, to 'set aside the withdrawal' of that petition). Thus, it is more properly viewed as a motion to reinstate. A motion to reinstate is a pleading other than an original petition. Thus, section 122-5 gives postconviction courts the discretion to extend the applicable one-year time limit." *Id.* ¶ 30.

As noted *supra*, the appellate court in this case found the analysis of *York* particularly compelling.

¶ 36    As timely filing—or refiling—is at the heart of this matter, we begin with the statutory time constraints the legislature has imposed in section 122-1(c) of the Act, which sets forth the temporal requirements for filing an *original* postconviction petition. Each of those limitations admits of one excuse for a delay in timely filing—that "the delay was not due to [petitioner's] culpable negligence." 725 ILCS 5/122-1(c) (West 2014). In two recent cases, this court has spoken to the importance of the Act's temporal filing requirements *and* the need to limit the number of filings under the Act's provisions.

¶ 37    In *People v. Johnson*, 2017 IL 120310, ¶ 21, this court noted: "Though the statute has undergone numerous revisions due to various amendments, what we can deduce is that the legislature has always intended to provide a deadline for filing a postconviction petition and also that the legislature has gradually decreased the time period in which a petition may be filed."

¶ 38    In *People v. Bailey*, 2017 IL 121450, we recognized the legislature's intention, generally, to limit a petitioner to one petition in postconviction proceedings (*id.* ¶ 15) and the primacy of the Act's provisions, irrespective of the legislature's reference to supplemental application of the Code's provisions (*id.* ¶ 29). In the latter respect, this court noted that, though proceedings under the Act are "civil in nature, they are *sui generis*, and for that reason general civil practice rules and procedures apply only to the extent they do not conflict with the *** Act." *Id.* As for the former, we acknowledged: "[T]he Act contemplates the filing of only one petition without leave of court (725 ILCS 5/122-1(f) (West 2014)), and any claim not presented in an original or amended petition is waived (725 ILCS 5/122-3 (West 2014)). For this reason, successive postconviction petitions are highly disfavored." *Id.* ¶ 39.

¶ 39    In 2004, the legislature adopted the cause-and-prejudice test to screen and limit the filing of successive postconviction petitions. See 725 ILCS 5/122-1(f) (West 2014). The addition of subsection (f) to section 122-1 evinces legislative intent to further modify the Act's existing statutory scheme in a way that will curtail the filing of multiple petitions and the initiation of additional proceedings beyond the proceeding on the original petition or any amended petitions derivative thereof. Subsection (f) is just the most recent indicator of legislative recognition of the need for finality. This court has long recognized that the "successive filing of post-conviction petitions plagues *** finality." *People v. Flores*, 153 Ill. 2d 264, 274 (1992).

¶ 40    It is against this legislative and jurisprudential background, underscoring the need for finality and evincing a clear intent that "[o]nly one petition may be filed by a petitioner under this Article without leave of the court" (725 ILCS 5/122-1(f) (West 2014)) that we consider this case.

¶ 41    Two questions seem to emerge from appellate jurisprudence in this area: (1) What, if any, place should section 13-217 of the Code occupy in postconviction proceedings? (2) What limitations are there upon a circuit court's authority, after "withdrawal" of a postconviction petition, to allow the filing of a new petition, refiling, reinstatement, or whatever term one might choose to apply?

¶ 42    We look first to precedent pertaining to section 13-217, mindful that postconviction proceedings "are *sui generis*, and for that reason general civil practice rules and procedures apply only *to the extent* they do not conflict with the *** Act." (Emphasis added.) *People v. Bailey*, 2017 IL 121450, ¶ 29. The applicable version of section 13-217 provides in pertinent part:

> "In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if *** the action is *voluntarily dismissed* by the plaintiff, *** then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff *** may commence a new action within one year or within the remaining period of limitation, whichever is greater, *** after the action is voluntarily dismissed by the plaintiff ***." (Emphasis added.) 735 ILCS 5/13-217 (West 1994).

¶ 43    "Voluntary dismissal" is addressed by the legislature in section 2-1009 of the Code. 735 ILCS 5/2-1009 (West 2014). Section 2-1009 provides in pertinent part:

> "(a) The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause.
>
> (b) The court may hear and decide a motion that has been filed prior to a motion filed under subsection (a) of this Section when that prior filed motion, if favorably ruled on by the court, could result in a final disposition of the cause.
>
> (c) After trial or hearing begins, the plaintiff may dismiss, only on terms fixed by the court (1) upon filing a stipulation to that effect signed by the defendant, or (2) on motion specifying the ground for dismissal, which shall be supported by affidavit or other proof." *Id.*

¶ 44    This court, in *McClure*, without mentioning or discussing section 2-1009 or its requirements, held that a petitioner who "voluntarily withdraws" his petition to rescind statutory summary suspension of a driver's license may refile the petition within one year, pursuant to the provisions of section 13-217. *McClure*, 218 Ill. 2d at 377, 382, 390. In effect, this court treated the withdrawal as a "voluntary dismissal" and the resulting order as a dismissal "without prejudice." Thus, the appellate court in *English* quite rightly cited *McClure*

in reaching the analogous conclusion that "[v]oluntary withdrawal of a postconviction petition is equivalent to a voluntary dismissal in a civil case." *English*, 381 Ill. App. 3d at 909.[8]

¶ 45    Withdrawal of a postconviction petition—a matter subject to the discretion of the circuit court—is addressed in section 122-5 of the Act. Section 122-5 provides:

> "Within 30 days after the making of an order pursuant to subsection (b) of Section 122-2.1, or within such further time as the court may set, the State shall answer or move to dismiss. In the event that a motion to dismiss is filed and denied, the State must file an answer within 20 days after such denial. No other or further pleadings shall be filed except as the court may order on its own motion or on that of either party. The court may in its discretion grant leave, at any stage of the proceeding prior to entry of judgment, to withdraw the petition. The court may in its discretion make such order as to amendment of the petition or any other pleading, or as to pleading over, or filing further pleadings, or extending the time of filing any pleading other than the original petition, as shall be appropriate, just and reasonable and as is generally provided in civil cases." 725 ILCS 5/122-5 (West 2014).

¶ 46    In section 122-5, withdrawal of a petition and amendment of an existing petition in an ongoing proceeding are treated in separate sentences, suggesting that the legislature intended disjunctive treatment. As provided in the fourth sentence of section 122-5's statutory scheme, a petitioner may choose—subject to the discretion of the court—to withdraw his or her petition prior to judgment, as opposed to working to correct perceived deficiencies in an existing petition that remains pending—the procedural scenario addressed in the fifth sentence of that section. The Act does not speak to refiling or reinstatement of claims after a petition is withdrawn, and consequently it provides no limitation period for refiling. Section 13-217 of the Code would logically apply to provide the time frame for refiling at a later date, just as it did in *McClure*. Were it otherwise, there would be no deadline for reinstatement of claims timely raised in the original petition, leaving the matter unresolved and in a state of procedural limbo, which we find inconsistent with the Act's statutory scheme. The construction that *petitioner* would give to section 122-5 is one that would give the circuit court discretion to allow reinstatement or refiling of a withdrawn petition with no temporal limitation whatsoever. That is clearly at odds with the intent of the legislature as evinced by its changes to the Act over the years. See *Johnson*, 2017 IL 120310, ¶ 21. We therefore hold that section 13-217 is available to a petitioner who timely files an original petition but subsequently chooses, and is granted leave, to withdraw it.[9]

¶ 47    However, those petitioners who choose this procedural option, rather than working to amend existing petitions in ongoing proceedings, are bound by its limitations, one of which is required refiling or reinstatement within one year or the remaining limitation period. When the period for refiling pursuant to section 13-217 has expired, the litigation is effectively

---

[8]In *English*, the petitioner, employing section 2-1009's procedure and terminology, filed a "motion for voluntary dismissal" seeking an order of dismissal "without prejudice." There was, in our discussion of *McClure*, no suggestion that petitioner there did anything other than withdraw his petition. The distinction is significant only if notice of intent to refile at a later date matters, and our holding in *McClure* can only be read to mean it does not.

[9]We note that neither section 13-217 nor section 122-5 would allow a petitioner to evade rulings on pending dispositional motions filed by the opposing party.

terminated. *S.C. Vaughn Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 502 (1998). There is an end.[10] The statutory excuses included in section 122-1(c) of the Act for late filing of the *initial* postconviction petition (725 ILCS 5/122-1(c) (West 2014))—facts showing that the delay was not due to petitioner's culpable negligence—do not apply to refiling or reinstatement under section 13-217 of the Code. It is our view that extending the time for refiling, in the manner petitioner suggests and the appellate court appears to have accepted, is inconsistent with legislative intent as expressed in the provisions of the Act.

¶ 48                                                     CONCLUSION

¶ 49    Applying the foregoing principles in this case, it is clear that petitioner sought reinstatement well beyond the time limitations of either the Act or section 13-217 of the Code. This litigation is at an end. No further proceedings are indicated. We note, in passing, that the facts of record in this case would not, in any event, have supported a finding that petitioner's delay in refiling was not due to his culpable negligence. The timing was, obviously, intentional and strategic. Petitioner is, of course, free to seek leave to file a successive postconviction petition if he chooses to do so.

¶ 50    For the foregoing reasons, the judgment of the appellate court is reversed.

¶ 51    Appellate court judgment reversed.

¶ 52    Circuit court judgment affirmed.

---

[10]The Act offers a petitioner a full and fair opportunity to present his or her constitutional claims but encourages the petitioner to do so in the initial petition and the ensuing proceeding. Section 122-5 allows for amendment—subject to the discretion of the court—where the petition has cleared the first stage. It is obviously contemplated by the legislature—and in the interest of petitioners—that petitioners bring their claims with consideration and forethought and that they seek resolution of those claims in that initial proceeding.