2021 IL App (5th) 190030-U

NOTICE

Decision filed 05/20/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

NO. 5-19-0030

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 99-CF-1492 |
| | ) | |
| DIWONE A. WALLACE, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the order of the circuit court of St. Clair County that denied the defendant's *pro se* motion for leave to file a successive postconviction petition, because even if we assume, *arguendo*, that a successive postconviction petition is an available vehicle by which a defendant may pursue a claim that the defendant is entitled to a new evidentiary hearing on the defendant's first postconviction petition when the defendant has alleged that a due process violation occurred during the proceedings on the first postconviction petition, we conclude that the defendant in this case has not demonstrated the requisite cause and prejudice to warrant the granting of leave to file a successive postconviction petition.

¶ 2    The defendant, Diwone A. Wallace, appeals the denial, by the circuit court of St. Clair County, of his *pro se* motion for leave to file a successive postconviction petition. On appeal, now represented by counsel, the defendant contends he has satisfied the requisite cause-and-prejudice

1

test and should be allowed to file his petition. For the following reasons, we affirm the circuit court's order.

¶ 3                                          I. BACKGROUND

¶ 4      On October 17, 2018, the defendant, who is serving a sentence of natural life in prison for committing two murders in 1999, filed *pro se*, *inter alia*, a motion for leave to file a successive postconviction petition. Therein, the defendant contended "that his due process rights were violated" because, the defendant alleged, the judge who presided over the October 2011 evidentiary hearing on his first postconviction petition, the Honorable Michael N. Cook, "was using drugs" at the time of the hearing, which rendered the results of the hearing "unreliable." The defendant asserted that although he first learned of Judge Cook's drug use in 2014, at that time the defendant did not know if Judge Cook was using drugs in 2011. He alleged that he "received an article off the internet" in August 2018 which, according to the defendant, "revealed that Judge Cook had been addicted and using drugs since 2010," and that "[t]he drugs he used were prescription pain pills, cocaine, and heroin." The defendant next asserted, "So[,] Judge Cook was using drugs in 2011 when he presided over th[e] defendant's evidentiary hearing." The defendant alleged that "prejudice is presumed and is an automatic violation of his due process rights, where a presiding judge is addicted to mind and psychological altering drugs that are being consumed daily and habitually while presiding over this defendant's evidentiary proceedings." The relief requested by the defendant was a new evidentiary hearing on his first postconviction petition. Attached to the defendant's motion, as an exhibit, was a March 28, 2014, newspaper article. In the article, and of relevance to the defendant's allegations in his *pro se* motion, the author of the article discussed Judge Cook's March 2014 sentencing hearing in federal court and stated that then-U.S. Attorney Steve Wigginton "said that Cook's addiction began with prescription pain pills he took for a health condition, aggravated by the death of his sister in 2010."

2

¶ 5    On November 15, 2018, the Honorable Julie Katz, the trial judge presently assigned to the defendant's case, entered an order in which, *inter alia*, she ruled that the defendant had not shown the requisite cause and prejudice to warrant leave to file a successive postconviction petition. She also noted that the defendant appealed the order entered by Judge Cook following the evidentiary hearing on the defendant's first postconviction petition, and that this court affirmed Judge Cook's decision on its merits. Judge Katz denied the defendant's *pro se* motion for leave to file a successive postconviction petition. The defendant filed a motion to reconsider, which also was denied. This timely appeal followed. Additional facts will be provided as necessary throughout the remainder of this order.

¶ 6                                    II. ANALYSIS

¶ 7    Pursuant to section 122-1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2018)), a defendant must obtain leave of the circuit court before that defendant is entitled to review of a second or subsequent—in other words, a successive—postconviction petition on its merits. *People v. Bland*, 2020 IL App (3d) 170705, ¶ 9. The threshold requirement to obtain leave to file a successive petition is that the defendant must satisfy the cause-and-prejudice test. *Id.* Under this test, the defendant must demonstrate both (1) "cause" for failing to raise, in prior proceedings, the error the defendant now wishes to raise, and (2) actual "prejudice" resulting from the claimed error. *Id.* Illinois courts have defined "cause" as an objective factor that impeded the defendant's efforts to raise the claim in an earlier proceeding, and have defined "prejudice" as an error that so infected the entire trial that the defendant's conviction violates standards of due process. *Id.* This court has recognized that the Illinois Supreme Court has held that the cause-and-prejudice test for successive postconviction petitions involves a higher standard than the frivolous or patently without merit standard that is applied to first-stage postconviction petitions. *Id.* A defendant who seeks leave from the circuit court to file a successive petition must

3

submit enough in the way of pleadings and documentation to allow the circuit court to make an independent determination on the legal question of whether adequate facts have been alleged for a *prima facie* showing of cause and prejudice. *Id.* If a defendant fails to adequately allege cause and prejudice, the circuit court does not reach the merits of the defendant's successive petition, or conduct further proceedings, because the cause-and-prejudice test is a procedural prerequisite to obtaining that review. *Id.*

¶ 8 We review *de novo* a circuit court's ruling on a defendant's motion for leave to file a successive postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶ 13. As we do so, we are mindful of the fact that successive postconviction petitions are "highly disfavored." *Id.* ¶ 39; see also *People v. Simms*, 2018 IL 122378, ¶ 39 (section 122-1(f) of the Act shows intent of legislature to curtail filings of successive petitions, in recognition of need for finality in criminal prosecutions). We are also mindful of the fact that when a defendant files a motion seeking leave to file a successive postconviction petition, "[t]he defendant has the burden to plead sufficient facts and submit supporting documentation sufficient to allow the circuit court to make its [cause-and-prejudice] determination." *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25. "As with an initial postconviction filing, in considering a motion for leave to file a successive petition, all well-pleaded facts and supporting affidavits are taken as true." *Id.* However, it is a well-established principle in Illinois that even in circumstances where a court is to accept as true all well-pleaded facts and any reasonable inferences that may arise from those facts, the court nevertheless cannot accept as true mere conclusions unsupported by specific facts. See, *e.g.*, *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 57; see also *People v. Wideman*, 2016 IL App (1st) 123092, ¶¶ 59-62 (supporting documentation that does not contain well-pleaded facts is insufficient to support granting leave to file a successive postconviction petition).

4

¶ 9     On appeal in this case, the defendant contends that Judge Katz erroneously denied the defendant's *pro se* motion for leave to file a successive postconviction petition, because, according to the defendant, Judge Cook "was a narcotics addict at the time of the" October 2011 evidentiary hearing on the defendant's first postconviction petition. He further contends that he has alleged the requisite cause for failing to bring this claim in his first postconviction petition because during the course of the proceedings on that petition, he was not aware of the drug use he now alleges on the part of Judge Cook. He argues that he suffered actual prejudice in this case because although this court affirmed Judge Cook's 2011 ruling, he contends that this court did so after reviewing Judge Cook's reasoning for manifest error, which he suggests means that this court offered "deference to a trier of fact who was a narcotics addict." In terms of the relief he requests on appeal, the defendant suggests that there should be an evidentiary hearing at which the circuit court considers whether Judge Cook was "intoxicated" or "clouded in his judgment from his addiction" at the time of the defendant's October 2011 evidentiary hearing.

¶ 10    The State raises two objections in its brief on appeal. First, the State contends that because the defendant's claim of error does not arise from the trial that led to his murder convictions and sentence of life imprisonment, he cannot bring his claim of error in a successive postconviction petition filed pursuant to the Act. The State posits that the appropriate vehicle by which a defendant may contend that there was a problem in the proceedings on a postconviction petition is a petition for relief from judgment filed pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)). Second, the State argues that even if this court were to find that a successive postconviction petition filed pursuant to the Act is an available vehicle by which a defendant may pursue a claim that the defendant is entitled to a new evidentiary hearing on the defendant's first postconviction petition, this court should conclude that the defendant in this case has not demonstrated the requisite cause and prejudice to warrant the granting of leave to file a

5

successive postconviction petition. With regard to the latter point, the State notes that the March 2014 newspaper article presented by the defendant in support of his allegations demonstrates, at most, that Judge Cook might have been using drugs in 2011, not that he was. The State also contends that the defendant bears the burden of proving that Judge Cook was actually, rather than probably, biased against him, and also bears the burden of proving the nexus between Judge Cook's alleged drug use and the outcome of the defendant's evidentiary hearing. The State posits as well that a harmless error analysis may be applied to allegations of judicial bias, and that the evidence against the defendant at trial in this case was overwhelming. The State further alleges that the defendant, who admits he learned in 2014 of Judge Cook's drug issues, did not act with reasonable diligence where he failed to discover the March 2014 newspaper article until August 2018. Finally, the State contends that the defendant cannot show that he was prejudiced by this court's purported review, for manifest error, of Judge Cook's 2011 order, because this court's review in the present appeal will be *de novo*, and will reveal that Judge Cook did not err.

¶ 11    In his reply brief, the defendant contends that a successive postconviction petition is an appropriate vehicle by which to bring his current claim, because the proceedings on his first postconviction petition were tied directly to his underlying trial, and thus create a sufficient nexus between the two proceedings to satisfy the requirements of the Act. He points to cases in which courts of review have allowed a successive postconviction petition as a means to address problems in the proceedings on a prior postconviction petition. He claims the outcome would have been different on his first postconviction petition "had [Judge] Cook not been drug-addled." He reiterates his belief that probable, rather than actual, judicial bias is all that must be shown, and that a harmless error analysis may not be applied to claims of judicial bias. He further claims that the March 2014 newspaper article he attached to his *pro se* motion for leave to file a successive

6

postconviction petition "demonstrate[s] former Judge Cook was a heroin, cocaine, and prescription drug addict around the time of [the defendant's] 2011 hearing."

¶ 12 We begin with the State's first contention on appeal, which is that because the defendant's claim of error does not arise from the trial that led to his murder convictions and sentence of life imprisonment, he cannot bring his claim of error in a successive postconviction petition filed pursuant to the Act. The State bases this argument on the plain language of the Act. However, we conclude that it is not appropriate for this court to consider this contention at this time, because doing so is not necessary to our disposition of this appeal. We conclude this because even if we assume, *arguendo*, that the State is incorrect, and that a successive postconviction petition *is* an available vehicle by which a defendant may pursue a claim that the defendant is entitled to a new evidentiary hearing on the defendant's first postconviction petition when the defendant has alleged that a due process violation occurred during the proceedings on the first postconviction petition, we conclude that the defendant in this case has not demonstrated the requisite cause and prejudice to warrant the granting of leave to file a successive postconviction petition.

¶ 13 The defendant's claim of error in this case is that his due process rights were violated because, he asserts, as a matter of law a judge violates a defendant's due process rights if that judge uses illegal drugs, or abuses legal prescription drugs, at the time the judge presides over the defendant's third-stage evidentiary hearing. Implicit in this legal premise is an underlying fact that must exist before the due process violation can occur: the fact that the judge—in this case, Judge Cook—was using illegal drugs or abusing legal prescription drugs at the time the judge was presiding over the defendant's third-stage evidentiary hearing—which, in this case, occurred in October 2011. If this "fact" was not sufficiently demonstrated by the documentation accompanying the defendant's motion, then both his cause and his prejudice arguments fail, because each of those arguments was also premised on the "fact" of Judge Cook's drug use at the time of the October

7

2011 hearing: the defendant's "cause" argument was premised on him not being aware of the fact of such drug use at that time, and his "prejudice" argument was premised on him being prejudiced by having his case decided by a judge who was in fact using illegal drugs or abusing legal prescription drugs at that time.

¶ 14    It is apparent from the record that throughout these proceedings the defendant has recognized the necessity of demonstrating this factual premise. The March 2014 newspaper article he attached to his *pro se* motion as an exhibit is the only evidence he has provided as purported documentation of his factual premise. In his motion, he alleged that the article "revealed that Judge Cook had been addicted and using drugs since 2010," and that "[t]he drugs he used were prescription pain pills, cocaine, and heroin." The defendant next asserted, "So[,] Judge Cook was using drugs in 2011 when he presided over th[e] defendant's evidentiary hearing." He further asserted, *pro se*, that "prejudice is presumed and is an automatic violation of his due process rights, where a presiding judge is addicted to mind and psychological altering drugs that are being consumed daily and habitually while presiding over this defendant's evidentiary proceedings." On appeal, the defendant's counsel repeatedly asserts that Judge Cook "was" (not "might have been") "a narcotics addict at the time of the" October 2011 evidentiary hearing, and even makes the rather strident claim in his reply brief that Judge Cook was "drug-addled" during the hearing. He adds, in his reply brief, that the March 2014 newspaper article "demonstrate[s] former Judge Cook was a heroin, cocaine, and prescription drug addict around the time of [the defendant's] 2011 hearing."

¶ 15    The problem for the defendant is that the newspaper article does not even remotely make such a demonstration, and is not sufficient to meet the defendant's "burden to plead sufficient facts and submit supporting documentation sufficient to allow the circuit court to make its [cause-and-prejudice] determination." *Edwards*, 2012 IL App (1st) 091651, ¶ 25. Of relevance to the factual premise the defendant relies upon for both his cause and his prejudice arguments—and for his due

8

process claim—the newspaper article discusses Judge Cook's March 2014 sentencing hearing in federal court and states that then-U.S. Attorney Steve Wigginton "said that Cook's addiction began with prescription pain pills he took for a health condition, aggravated by the death of his sister in 2010." There are a number of problems with the defendant's *pro se* assertion, on the basis of this sentence in the article, that "So[,] Judge Cook was using drugs in 2011 when he presided over th[e] defendant's evidentiary hearing," and that Judge Cook was "addicted to mind and psychological altering drugs that [were] being consumed daily and habitually," as well as with counsel's repeated assertions on appeal about Judge Cook's purported drug use at that time. First, the sentence in question states only that Judge Cook's sister died in 2010, not that Judge Cook began taking, and became addicted to, prescription pain pills in 2010, or on any specific date thereafter. Even when taken as true, the statement that Judge Cook had a health condition that was aggravated by the death of his sister in 2010, and that at some point he used prescription pain pills to deal with that health condition, does not reasonably support the inference that he used—let alone abused—prescription pain pills, or any other drugs, during the defendant's October 2011 evidentiary hearing. The article does not in any way purport to speak with such precision about when Judge Cook's addiction began, and the defendant's unfounded leap of logic with regard to this point eviscerates the reliability of the factual basis for his repeated contention that he has established the "fact" of Judge Cook's drug use at that time. Second, although the sentence in the article that references the death of Judge Cook's sister in 2010 mentions an *addiction*, at some point in time, to prescription pain pills, it does not state that Judge Cook *abused* the pills—even if addicted to them—to the extent that it would have impaired him, and certainly provides no factual support for the notion that he did so in October 2011. Third, the sentence in the article that references the death of Judge Cook's sister in 2010 mentions only prescription pain pills, it does not mention cocaine or heroin at all.

9

¶ 16    In short, the defendant's leap from the sentence in the March 2014 article quoted above to his *pro se* purportedly factual assertions that "So[,] Judge Cook was using drugs in 2011 when he presided over th[e] defendant's evidentiary hearing," and was "addicted to mind and psychological altering drugs that [were] being consumed daily and habitually"—let alone the leap to counsel's repeated purportedly factual assertions on appeal about Judge Cook's alleged drug use at that time, including counsel's assertion that Judge Cook was "drug-addled"—is too disconnected from any specific facts to be sustainable.

¶ 17    It is certainly true, as explained above, that "as with an initial postconviction filing, in considering a motion for leave to file a successive petition, all well-pleaded facts and supporting affidavits are taken as true." *Edwards*, 2012 IL App (1st) 091651, ¶ 25. However, it is equally true that even in circumstances where a court is to accept as true all well-pleaded facts and any reasonable inferences that may arise from those facts, that court nevertheless cannot accept as true mere conclusions unsupported by specific facts. See, *e.g.*, *Better Government Ass'n*, 2017 IL 121124, ¶ 57; see also *Wideman*, 2016 IL App (1st) 123092, ¶¶ 59-62 (supporting documentation that does not contain well-pleaded facts is insufficient to support granting leave to file a successive postconviction petition). In this case, the factual premises upon which the defendant relies are no such things; to the contrary, rather than being well-pleaded facts, they instead are unsupported conclusions that simply cannot reasonably be derived from the contents of the March 2014 newspaper article. The defendant's assertions that are actually supported by facts, reasonable inferences drawn therefrom, and documentation are simply that (1) Judge Cook presided over the defendant's October 2011 evidentiary hearing and (2) Judge Cook was later determined to have had a drug problem at some point while he was on the bench, with his drug problem purportedly beginning with prescription pain pills he took for a health condition, aggravated by the death of his sister in 2010. These facts are a far cry from the purported "fact"—that Judge Cook was using

10

illegal drugs or abusing legal prescription drugs at the time of the defendant's October 2011 third-stage evidentiary hearing—that, as explained above, the defendant invoked in support of both his cause argument and his prejudice argument, as well as his underlying due process claim. Accordingly, because the supporting documentation provided by the defendant in this case was too tenuous and speculative to support the defendant's assertion that Judge Cook was using drugs at the time of the defendant's evidentiary hearing, it also was too tenuous and speculative to allow a court to conclude from it that the defendant satisfied the cause-and-prejudice test. As a result, Judge Katz did not err when she denied the defendant's motion for leave to file a successive postconviction petition. See, *e.g.*, *Bland*, 2020 IL App (3d) 170705, ¶ 9.

¶ 18    The denial of the defendant's *pro se* motion for leave to file a successive postconviction petition was proper for a second reason as well. The defendant posits on appeal that his motion established that he suffered actual prejudice in this case because although this court affirmed Judge Cook's 2011 ruling, he argues that this court did so after reviewing Judge Cook's reasoning for manifest error, which he suggests means that this court offered "deference to a trier of fact who was a narcotics addict." The defendant does not explain how his argument fits the definition of prejudice as an error that so infected the entire trial that the defendant's conviction violates standards of due process. See, *e.g.*, *id*. Moreover, in making this argument, the defendant misreads our earlier order in this case. In that order, this court noted the general proposition that "[w]hen a ruling after an evidentiary hearing requires the postconviction court to make credibility determinations and findings of fact, we will not reverse unless the court's decision is manifestly erroneous." *People v. Wallace*, 2013 IL App (5th) 110496-U, ¶ 24. However, in the sentences immediately following this statement, we added: "Here, the defendant has alleged ineffective assistance of counsel. We evaluate his claim under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Id.* ¶ 25. We then noted that under *Strickland*, to prevail on his

claim of ineffective assistance, the defendant was required to show, *inter alia*, that he suffered prejudice as a result of counsel's deficient performance, which in turn required the defendant to demonstrate that but for counsel's mistakes, there is a reasonable probability that he would not have been convicted at trial. *Id.*

¶ 19    We thereafter meticulously analyzed, in accordance with relevant case law, the sole contention raised on appeal by the defendant: that his trial counsel was ineffective for failing to call an additional alibi witness for the defendant, Calvery Brown. *Id.* ¶¶ 27-42. In so doing, we thoroughly reviewed the relevant evidence, set out earlier in our order (see *id.* ¶¶ 4-14), that was presented at the defendant's trial, which took place over a decade prior to the defendant's October 2011 evidentiary hearing, and which was not presided over by Judge Cook. In our analysis, we first noted that we did not believe that we could determine, from the record, whether the failure to call Brown as a witness was trial strategy. *Id.* ¶ 27. We concluded, however, that regardless of whether it was trial strategy, "the defendant's claim of ineffective assistance of counsel must fail because he cannot demonstrate that a different outcome was reasonably probable had Calvery Brown been called as an additional alibi witness." *Id.* In our analysis of this point—which was the point upon which we affirmed the circuit court's judgment (see *id.* ¶ 43)—we did not defer at all to Judge Cook's assessment of the defendant's trial; in fact, we never mentioned, even once, Judge Cook's order or analysis as we conducted our own assessment of whether the defendant had demonstrated the prejudice required under *Strickland*. *Id.* ¶¶ 28-42. To the extent any credibility determinations about the evidence presented at the defendant's trial were necessary, those determinations were made by this court (see *id.*), not by Judge Cook, who in any event never mentioned, when rendering his decision, any assessments he might have made as to the credibility of any of the witnesses who testified at the defendant's trial over a decade earlier. In fact, other than the one-sentence reference, in paragraph 24 of our order, to the standard of review that is

12

applied when a ruling after an evidentiary hearing requires the postconviction judge to make credibility determinations and findings of fact, we did not, in the entirety of our order, mention a manifest weight of the evidence standard of review, and at no point did we state that we were affirming Judge Cook's judgment because it was not manifestly erroneous. See *id.* ¶¶ 1-44.

¶ 20    Thus, the record on appeal in this case completely repudiates the defendant's contention that when deciding the defendant's previous appeal, in *People v. Wallace*, 2013 IL App (5th) 110496-U, this court deferred to Judge Cook's findings of fact or credibility determinations, and thoroughly rebuts the notion that the defendant was in any way prejudiced as a result of Judge Cook presiding over the defendant's evidentiary hearing. The sole potentially-meritorious issue[1] presented in the defendant's first postconviction petition was considered on appeal by a panel of three impartial judges of this court, without deference to Judge Cook's analysis of, and conclusions about, that petition, and was found to be without merit. We conclude that our review of the evidence presented at the defendant's trial, and our conclusion that the evidence was not closely balanced and that accordingly the defendant's ineffective assistance of counsel claim failed on appeal because the defendant could not show the required prejudice as a result of the alleged ineffective assistance, means this case is not "one of those rare instances where the defendant should be allowed to proceed in his successive postconviction petition" (*People v. White*, 2020 IL App (5th) 170345, ¶ 31), because the outcome would nevertheless be the same. In light of that conclusion, we do not believe that justice would be served in this case by allowing further proceedings on a meritless claim. In short, because of the manner in which this court handled the

---

[1]At no point has the defendant contended that other issues raised in the defendant's first postconviction petition (1) should have been raised by his counsel on appeal, (2) had merit, or (3) were improperly denied by Judge Cook. Accordingly, the defendant has forfeited consideration of any such arguments. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for a rehearing).

defendant's appeal from Judge Cook's ruling, not only was there no actual prejudice to the defendant, there also was no potential prejudice to the defendant. In other words, this is not a case in which the court is left to speculate as to whether there was prejudice: we see clearly that there was not. Accordingly, the defendant failed to adequately allege prejudice in this case. See *Bland*, 2020 IL App (3d) 170705, ¶ 9 (if a defendant fails to adequately allege cause and prejudice, the circuit court does not reach the merits of the defendant's successive petition, or conduct further proceedings, because the cause-and-prejudice test is a procedural prerequisite to obtaining that review).

¶ 21                                    III. CONCLUSION

¶ 22    For the foregoing reasons, we affirm the order of the circuit court of St. Clair County that denied the defendant's motion for leave to file a successive postconviction petition.


¶ 23    Affirmed.