NO. 4-21-0001

FILED
May 19, 2022
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Clark County |
| SCOTT D. HUNT, | ) | No. 03CF68 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Tracy W. Resch, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Cavanagh and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Scott D. Hunt, was convicted of various sex offenses and sentenced to a total of 47 years in prison. He filed a *pro se* postconviction petition but voluntarily withdrew his petition during the second stage of postconviction proceedings. Less than a year after his voluntary withdrawal, defendant filed a "Motion to Refile and Reinstate" an amended *pro se* postconviction petition. The Clark County circuit court granted the motion and later entered a first-stage dismissal of defendant's amended petition on the basis that it was frivolous and patently without merit. Defendant appeals, arguing his amended postconviction petition should have been reinstated at the second stage of postconviction proceedings because that was the stage his original postconviction petition had reached when he voluntarily withdrew it. Alternatively, he contends his amended postconviction petition set forth the gist of a constitutional claim that both his appellate counsel

and trial counsel were ineffective for failing to argue that the trial court relied on an improper aggravating factor at his sentencing. We affirm.

¶ 2                                I. BACKGROUND

¶ 3         In 2003, the State charged defendant with multiple sex-related offenses in connection with allegations that he sexually abused his nine-year-old adopted daughter, S.H.; possessed child pornography on his home computer; and engaged in sexual intercourse in the presence of S.H. and J.W., S.H.'s younger half-brother. S.H.'s mother, Jeannie Hunt, was defendant's wife and codefendant. Evidence in the case showed S.H. resided in Illinois with defendant, Jeannie, and J.W. However, defendant also worked as an over-the-road truck driver, and Jeannie, S.H., and J.W. would travel with him as he worked. S.H. reported sexual abuse that occurred both at the family's residence in Illinois and while traveling in defendant's semitruck.

¶ 4         Following a jury trial in December 2003, defendant was found guilty of three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2002)) (counts I, II, and III); two counts of aggravated criminal sexual abuse (*id.* § 12-16(b), (c)(1)(i)) (counts IV and V); five counts of child pornography (*id.* § 11-20.1(a)(6)) (counts VII through XI); and one count of sexual exploitation of a child (*id.* § 11-9.1(a)(1)) (count XII). In February 2004, the trial court sentenced defendant to a total of 45 years in prison. It imposed consecutive, 15-year prison sentences for each predatory-criminal-sexual-assault count. The court also imposed concurrent sentences of four years in prison for both aggravated-criminal-sexual-abuse counts, two years in prison for each child-pornography count, and 364 days in jail for the sexual-exploitation-of-a-child count.

¶ 5         On direct appeal, this court reversed defendant's convictions for aggravated criminal sexual abuse and sexual exploitation of a child (counts IV, V, and XII) based on a lack of

subject-matter jurisdiction, *i.e.*, a lack of evidence that the offenses were committed in Illinois. *People v. Hunt*, No. 4-04-0473 (2006) (unpublished order under Illinois Supreme Court Rule 23). We also held defendant's sentences were unauthorized by statutory law, which required that defendant's concurrent sentences for child pornography be served consecutively to the 15-year sentence the court imposed on his third count of predatory criminal sexual assault of a child. *Id.* Accordingly, we vacated defendant's sentences and remanded for a new sentencing hearing in conformity with statutory requirements. *Id.*

¶ 6 On remand, the trial court imposed the same sentences as before on defendant's surviving counts. However, consistent with this court's decision, it ordered defendant's concurrent sentences for child pornography to be served consecutively to his 15-year prison sentence on count III. As a result, defendant was sentenced to a total of 47 years in prison. He appealed, and this court affirmed the trial court's judgment. *People v. Hunt*, No. 4-07-0795 (2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7 In October 2009, defendant filed a *pro se* postconviction petition. He raised 12 claims of error, including a claim that his appointed counsel on remand, Kaye DeSelms, provided ineffective assistance due to a conflict of interest that arose from her simultaneous representation of Jeannie in postconviction proceedings. Defendant included a complaint that DeSelms "refused to challenge any of the 'aggravating factors' that was [*sic*] presented at [his] original sentencing hearing." Specifically, he alleged he asked DeSelms to object to the trial court considering that he "committed fraud to obtain the adoption of S.H.," arguing such an " 'aggravating factor' must be presented to a jury to determine before the court can use it as an aggravating factor to impose *** sentence." Defendant further maintained that DeSelms's proper investigation of "issues" for his resentencing could have adversely affected Jeannie and, thus, DeSelms could not effectively

represent both codefendants.

¶ 8    In December 2009, the trial court entered a written order advancing defendant's *pro se* petition to the second stage of postconviction proceedings. The court's order reflects that it found 2 of defendant's 12 claims were sufficient to warrant further consideration. The first was defendant's claim that DeSelms provided ineffective assistance. As to that claim, the court stated as follows:

> "While it is questionable that [d]efendant's claim is sufficiently pled to establish either prong of the *Strickland* test [(see *Strickland v. Washington*, 466 U.S. 668 (1984))], the court will give [d]efendant's claim all benefit of doubt and accept its sufficiency as a constitutional claim. The [d]efendant took a direct appeal from the resentencing hearing and had the opportunity to raise all issues affecting the resentencing hearing, including the trial court's consideration of factors in aggravation or mitigation. By failing to challenge the weight and consideration accorded to aggravating factors on his direct appeal from the sentencing hearing, the [d]efendant arguably has waived any claim of improper consideration, however, the court will not invoke waiver to preclude further consideration of this issue."

The second claim the court determined warranted further consideration concerned defendant's assertion that the mittimus issued upon his resentencing improperly failed to credit him for time he spent in prison between his original sentencing and the date he was resentenced. The court appointed attorney Richard Kash to represent defendant during postconviction proceedings. The record reflects Kash also represented defendant during his trial and original sentencing.

¶ 9    In January 2010, the State filed a motion to amend the mittimus issued after defendant's resentencing, conceding defendant's postconviction claim that his mittimus did not

reflect the proper amount of credit to which he was entitled. The same month, it filed a motion to dismiss the paragraph of defendant's postconviction petition alleging DeSelms's ineffective assistance. The State argued defendant's claim that DeSelms failed to investigate issues for his new sentencing hearing was not legally sufficient to show a violation of his constitutional rights. Further, it asserted he forfeited his claim that DeSelms was ineffective for failing to challenge the sentencing court's consideration of an improper aggravating factor since the issue was not raised on direct appeal.

¶ 10    Defendant's postconviction proceedings were thereafter continued on January 25 and March 1, 2010. At a hearing on April 26, 2010, Kash advised the trial court that he recently received "some new allegations" from defendant and asked for more time to "modify the petition." The record reflects the matter was continued without objection to June 14, 2010. At a hearing on that date, Kash requested more time to communicate with defendant regarding an amended petition, and the matter was continued generally. The record next shows that on April 4, 2011, *pro se* correspondence from defendant was filed, asserting defendant had not heard from Kash since June 2, 2010, and requesting information regarding the "status" of his postconviction petition along with "dockets from December 14, 2009[,] to the current date." A docket entry of the same date states "docket sheets" were mailed to defendant.

¶ 11    On October 1, 2018, defendant *pro se* filed a motion for leave to withdraw his postconviction petition. On July 10, 2019, the trial court conducted a hearing at which both the State and Kash appeared. Kash represented that he had communicated with defendant and confirmed that defendant wanted his petition withdrawn. The court granted defendant's motion.

¶ 12    On July 6, 2020, defendant filed a "Motion to Refile and Reinstate" postconviction proceedings, attaching an amended *pro se* postconviction petition to his filing. He asserted Kash

- 5 -

was appointed to represent him in connection with his postconviction petition and thereafter communicated with him in writing until shortly after June 16, 2010, when Kash "discontinued correspondence." Defendant further maintained that since the withdrawal of his postconviction petition "new information ha[d] become available" to him.

¶ 13   In his amended petition, defendant raised five claims of error. Relevant to this appeal, he asserted the trial court relied on an improper aggravating factor at his sentencing. Specifically, he complained that the court improperly commented on his adoption of S.H., stating he used the adoption proceedings "to perpetrate a fraud." Defendant included a claim that both his trial counsel and his appellate counsel were ineffective for failing raise the issue.

¶ 14   On August 3, 2020, the trial court allowed defendant's motion, ordering as follows: "[Defendant's] motion to refile and reinstate his original petition, now titled Amended *Pro Se* Petition for Post-Conviction Relief is granted." On September 24, 2020, the court entered a written order dismissing defendant's amended petition as frivolous and patently without merit. It specifically noted that defendant's amended petition was before it "on first-stage review." The court found defendant's assertion that the sentencing court considered an improper aggravating factor "fail[ed] to set forth the gist of a constitutional claim." Additionally, it stated defendant's claim was forfeited based on his failure to raise it on direct appeal. Defendant filed a motion to reconsider the dismissal of his amended petition, which the court also denied.

¶ 15   This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17                         A. Proceedings After Voluntary Withdrawal

¶ 18   On appeal, defendant initially argues the trial court erred by entering a first-stage dismissal of his amended postconviction petition. He contends that, because his original petition

- 6 -

had advanced to the second stage of postconviction proceedings before he voluntarily withdrew it, his amended petition was entitled to second-stage consideration upon the court's grant of his "Motion to Refile and Reinstate." Accordingly, defendant seeks reversal of the court's dismissal of his petition, a remand for second-stage proceedings, and the appointment of new postconviction counsel to represent him.

¶ 19 "The Post-Conviction Hearing Act [(725 ILCS122-1 *et seq.* (West 2018))] provides a three-stage process for an imprisoned person to raise a constitutional challenge to a conviction or sentence." *People v. Hatter*, 2021 IL 125981, ¶ 22, 183 N.E.3d 136. "At the first stage, the circuit court has 90 days to review a petition and may summarily dismiss it if the court finds it is frivolous and patently without merit." *People v. Pendleton*, 223 Ill. 2d 458, 472, 861 N.E.2d 999, 1007 (2006). If the petition is not dismissed within 90 days, it moves to the second stage, where the circuit court may appoint counsel for an indigent defendant, counsel may amend the petition, and the State may file a responsive pleading. *People v. Cotto*, 2016 IL 119006, ¶ 27, 51 N.E.3d 802. Further, at the second stage, "the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." (Internal quotation marks omitted.) *People v. Domagala*, 2013 IL 113688, ¶ 33, 987 N.E.2d 767. If such a showing is made, the defendant is entitled to a third-stage evidentiary hearing. *Id.* ¶ 34.

¶ 20 Postconviction proceedings are considered to be civil in nature. *People v. Bailey*, 2017 IL 121450, ¶ 29, 102 N.E.3d 114. However, such proceedings are also *sui generis*, and as a result, "general civil practice rules and procedures apply only to the extent they do not conflict with the *** Act." *Id.*

¶ 21 Section 122-5 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-5 (West 2018)) states the trial court "may in its discretion grant leave, at any stage of the proceeding prior

to entry of judgment, to withdraw the petition." A defendant's voluntary withdrawal of a postconviction petition under the Act has been deemed " 'equivalent to a voluntary dismissal in a civil case.' " *People v. Simms*, 2018 IL 122378, ¶ 44, 129 N.E.3d 1099 (quoting *People v. English*, 381 Ill. App. 3d 906, 909, 885 N.E.2d 1214, 1217 (2008)). Further, section 13-217 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/13-217 (West 1994)) has been held to apply under such circumstances. *Simms*, 2018 IL 122378, ¶ 46 (holding "section 13-217 is available to a [postconviction] petitioner who timely files an original petition but subsequently chooses, and is granted leave, to withdraw it"). Under that section, a plaintiff in a civil case "may commence a new action within one year or within the remaining period of limitation, whichever is greater, *** after the action is voluntarily dismissed by the plaintiff." 735 ILCS 5/13-217 (West 1994). In the postconviction context, it has been held that, "[w]hen a court allows a defendant to voluntarily withdraw an initial postconviction petition, the defendant can refile and reinstate the petition and have it treated as the original." *English*, 381 Ill. App. 3d at 909.

¶ 22        Here, there is no dispute that (1) defendant filed his "Motion to Refile and Reinstate" postconviction proceedings within one year of the voluntary withdrawal of his original petition and (2) the trial court properly granted that motion. The parties disagree, however, on whether defendant's amended petition, attached to his "Motion to Refile and Reinstate," should have been given first-stage or second-stage consideration. As stated, defendant argues a refiled or reinstated postconviction petition must continue from the same stage of postconviction proceedings that the original petition was in when it was withdrawn. Conversely, the State asserts that, upon withdrawal, an original postconviction petition becomes a nullity and the petition that is refiled under section 13-217 of the Civil Code "is an entirely new and separate action." We agree with the State.

¶ 23 In *Simms*, the supreme court found "[t]he Act does not speak to refiling or reinstatement of claims after a petition is withdrawn." *Simms*, 2018 IL 122378, ¶ 46. Accordingly, it looked to provisions of the Civil Code, specifically section 13-217, to determine the applicable time period for the refiling of a petition. *Id.* The supreme court held that postconviction petitioners who choose the "procedural option" of voluntarily withdrawing a petition, "rather than working to amend existing petitions in ongoing proceedings, are bound by [section 13-217's] limitations, one of which is required refiling or reinstatement within one year or the remaining limitation period." *Id.* ¶ 47.

¶ 24 We note an additional "limitation" under the plain language of section 13-217 is that it permits a party to "commence a new action" as opposed to continuing a previous one. 735 ILCS 5/13-217 (West 1994). As noted by the State, cases applying section 13-217 in the context of a voluntary dismissal of a civil action hold that "[a] refiled action pursuant to section 13-217 is not a restatement of the old action, but an entirely new and separate action." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 48, 53 N.E.3d 1; see *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 504, 687 N.E.2d 871, 875 (1997) (noting that, under section 13-217, a "refiled action is an entirely new and separate action, not a reinstatement of the old action").

¶ 25 Recently, in *Eighner v. Tiernan*, 2021 IL 126101, ¶¶ 21-25, the supreme court held that, in the context of a civil proceeding, the "commence a new action" language in section 13-217 unambiguously denoted the filing of a new complaint with a new case number. Further, it noted the existence of a distinct process under section 2-1203(a) of the Civil Code for "reinstating a complaint following a voluntary dismissal order." *Id.* ¶ 25 (citing 735 ILCS 5/2-1203(a) (West 2014)). The court stated as follows:

"Section 2-1203(a) *** grants a plaintiff the right to file a motion to vacate a voluntary dismissal order and reinstate the case up to 30 days after the date of the dismissal order, which the circuit court has the discretion to grant or deny. [Citation.] A circuit court may also extend the 30-day deadline for filing a motion, so long as the extension is granted within the initial 30-day timeframe. If neither of these things occur and if there are no other conditions in the dismissal order, the circuit court loses jurisdiction over the case 30 days after the voluntary dismissal order is entered. [Citations.] At that point, the court may no longer entertain any request for reinstatement or other relief under section 2-1203(a).

Section 2-1203(a) governs the process of reinstating a complaint following a voluntary dismissal order. Section 13-217 does not. By its plain terms, section 13-217 does not alter the scope or application of section 2-1203(a) and, importantly, does not eliminate the rule that the circuit court loses jurisdiction 30 days after the entry of a voluntary dismissal order is entered if no postjudgment motion is filed. This fact underscores why the term 'new action' in section 13-217 means a new complaint, with a new case number." *Id.* ¶¶ 24-25.

¶ 26     As stated, general civil practice rules and procedures apply to postconviction proceedings to the extent they do not conflict with the Act. *Bailey*, 2017 IL 121450, ¶ 29. Further, although the Act provides for the voluntary withdrawal of postconviction petitions (725 ILCS 5/122-5 (West 2018)), it "does not speak to refiling or reinstatement of claims after a petition is withdrawn" (*Simms*, 2018 IL 122378, ¶ 46). Accordingly, section 13-217 may be applied following the voluntary withdrawal of a postconviction petition, and cases interpreting the effect of procedures under that section are instructive in postconviction cases.

¶ 27        Here, defendant moved to withdraw his original postconviction petition, citing section 122-5 of the Act. The trial court granted defendant's motion without placing any conditions on the dismissal. Defendant did not move to vacate the withdrawal within 30 days after it was entered, nor did he request any time extensions. However, within one year, he filed a "Motion to Refile and Reinstate," asking the court to apply section 13-217 of the Civil Code and allow the filing of his amended postconviction petition. Despite the manner in which his motion was titled, under section 13-217 of the Civil Code, defendant was not entitled to a "reinstatement" of his original petition and a continuation of those original proceedings. Instead, he was entitled to refile a postconviction petition and have it treated as an original petition under the Act. Accordingly, we find the circuit court did not err by applying a first-stage analysis to defendant's amended *pro se* postconviction petition.

¶ 28        On appeal, defendant primarily relies on three cases to support his contention that he was entitled to have his amended postconviction petition "reinstated" at the second stage of postconviction proceedings. First, defendant cites *English*, 381 Ill. App. 3d at 907, where, similar to this case, the trial court granted the defendant's motion for voluntary dismissal of his postconviction petition at the second stage of postconviction proceedings. Less than a year later, the defendant filed a motion to reinstate and amend his petition, which the court denied. *Id.* On review, the Third District stated that the "[v]oluntary withdrawal of a postconviction petition is equivalent to a voluntary dismissal in a civil case." *Id.* at 909. It held that, "[w]hen a court allows a defendant to voluntarily withdraw an initial postconviction petition, the defendant can refile and reinstate the petition and have it treated as the original." *Id.* Relying on section 13-217 of the Civil Code, the court held that the defendant's motion to reinstate and amend his original postconviction petition should have been allowed, as it was "filed within one year of the voluntary withdrawal"

of his original petition. *Id.* at 910. It reversed the trial court's denial of the defendant's motion and remanded the matter to the trial court "to reinstate the original postconviction petition, with amendments, and treat it *as an initial petition*." (Emphasis added.) *Id.*

¶ 29 Defendant argues that the relief granted in *English* establishes that a refiled or "reinstated" petition under section 13-217 must be treated "as the original" postconviction petition, which he interprets as requiring a continuation of the original postconviction proceedings at the same stage they were at prior to withdrawal. He asserts that, "[b]ecause [his] original petition was a second-stage petition at the time he withdrew it, it remained a second[-]stage petition at the time he reinstated it." Defendant argues that a different outcome would "punish *pro se* petitioners for exercising their right to voluntarily withdraw and then reinstate their petitions." We disagree.

¶ 30 Initially, we note that in *English*, the Third District was primarily concerned with the timing of a motion to refile or "reinstate" a voluntarily withdrawn postconviction petition. It did not explicitly address the effect of refiling or "reinstatement" under section 13-217. Nothing in that decision squarely addresses the issue presented here. Further, although *English* states a "defendant can refile and reinstate the petition and have it treated as the original" (*id.*), such language does not require a continuation of the proceedings at the same stage they were at prior to the voluntary withdrawal. Rather, we interpret it to mean that a petition refiled pursuant to section 13-217 is given the same treatment under the Act as an original filing and that it is not subject to the requirements of a successive postconviction petition. This result does not "punish" a postconviction petitioner who voluntarily withdraws his or her petition and, later, seeks to refile. Instead, it is simply a consequence of the procedural process that is chosen. See *Simms*, 2018 IL 122378, ¶ 47 ("[T]hose petitioners who choose [the section 13-217] procedural option, rather than working to amend existing petitions in ongoing proceedings, are bound by its limitations.").

¶ 31    Second, defendant also relies on this court's decision in *People v. Pace*, 386 Ill. App. 3d 1056, 899 N.E.2d 610 (2008). There, in July 1999, the defendant filed a *pro se* postconviction petition that was advanced to the second stage of postconviction proceedings. *Id.* at 1057. In April 2007, the defendant's postconviction counsel "petitioned for voluntary dismissal without prejudice" after concluding the defendant's petition raised no colorable argument for postconviction relief. *Id.* In June 2007, the trial court dismissed the petition. *Id.* In January 2008, the defendant sought reconsideration of the dismissal and "reinstatement of the petition," asserting his counsel had not notified him of "the motion for voluntary dismissal" of his petition. *Id.* He also asserted his counsel "should have been removed and should not have been allowed to seek the dismissal of his postconviction petition." *Id.* Ultimately, the court denied the defendant's motion. *Id.* at 1058.

¶ 32    On review, this court found that "[t]he trial court should have granted [the] defendant's request to reinstate his petition," noting that "[w]hen [the] defendant asked for a reinstatement, he did so within the time 'civil cases' allow the refiling of a complaint." *Id.* at 1062-63. We also described postconviction counsel's decision to seek a voluntary dismissal of the defendant's petition as "troublesome," stating that "[i]f counsel and the trial court believed [the] defendant's case lacked merit, they should have allowed the *pro se* petition to proceed with or without counsel." *Id.* at 1063. Further, we stated "the combined actions of appointed counsel and the trial court usurped the second stage of the proceedings under the Act, denying [the] defendant the very process he sought by filing his *pro se* petition." *Id.* We reversed the trial court's "order on [the] defendant's motion to reconsider the voluntary dismissal and remand[ed] for further proceedings." *Id.*

¶ 33    Again, *Pace* does not address the specific issue presented in the case at bar—the

effect of refiling under section 13-217 in a postconviction proceeding. Contrary to defendant's assertions on appeal, *Pace* neither explicitly holds nor suggests that the refiling or "reinstatement" of a postconviction petition under section 13-217 "returns the petition to the stage it was in before it was withdrawn." Relying on *Pace*, defendant also suggests second-stage consideration of his amended petition is warranted based on Kash's "delay" in amending his original *pro se* postconviction petition, noting that his petition remained pending before the trial court for nine years before it was withdrawn. Although we do not dispute that there was an inexplicably lengthy period of inaction on defendant's original petition, unlike in *Pace*, the record in this case shows withdrawal of defendant's original petition was prompted by defendant, who *pro se* filed a motion to withdraw. Additionally, when defendant filed his "Motion to Refile and Reinstate," he noted he was doing so based on the discovery of new and previously unavailable information, not any alleged neglect of his case by Kash. Accordingly, *Pace* both fails to speak to the precise issue at hand in this case and is factually distinguishable.

¶ 34        Third, defendant finally relies on this court's decision in *People v. Coe*, 2018 IL App (4th) 170359, 118 N.E.3d 1256. In that case, the defendant filed a postconviction petition that advanced to a third-stage evidentiary hearing before it was denied by the trial court. *Id.* ¶¶ 3-4. The defendant appealed, and this court reversed and remanded for a new evidentiary hearing. *Id.* ¶ 5. On remand, the defendant was granted several continuances as he attempted to obtain private counsel. *Id.* ¶ 6. On September 2, 2014, he failed to appear at a court hearing, and the trial court granted the State's motion to dismiss his postconviction petition for want of prosecution. *Id.* ¶ 7. On October 6, 2014, the defendant filed a motion asking the trial court to deny the State's motion to dismiss and to appoint him counsel. *Id.* ¶ 8. The trial court appointed counsel for the defendant and construed his motion as a " 'motion to *** reinstate the first amended petition for

post-conviction relief.' " *Id.* ¶ 9. The court ruled that the defendant's motion to reinstate was timely filed within 30 days of the dismissal of his petition under the mailbox rule and allowed the motion. *Id.* ¶¶ 11, 13. However, it subsequently dismissed the defendant's reinstated petition as moot based on the defendant having completely served his prison sentence. *Id.* ¶ 14.

¶ 35    On appeal, this court held the defendant's release from custody during the pendency of his postconviction proceedings did not make his petition moot. *Id.* ¶ 55. Accordingly, we reversed the trial court's judgment and remanded for further proceedings. *Id.* ¶ 57.

¶ 36    In so holding, we also addressed the issue of "reinstatement" following a "dismissal for want of prosecution." *Id.* ¶¶ 52-54. We noted that, relying on *English* and section 13-217 of the Civil Code, the State argued "the reinstatement of [the] defendant's postconviction proceeding commenced a new postconviction proceeding." *Id.* ¶ 52. It maintained that, since the defendant was no longer in custody when reinstatement was allowed and "the new proceeding commenced," he lacked standing under the Act. *Id.* This court disagreed with the State's argument, finding the "defendant never commenced a new action under section 13-217" and, instead, "obtained a reinstatement of his postconviction petition." *Id.* ¶ 53. We further stated as follows:

>    "[A]sking the trial court to reinstate a petition that the court dismissed for want of prosecution is the same as asking the court to vacate the dismissal for want of prosecution. [Citations.] It is well-settled that *vacatur* of an order in due time leaves the pleadings the same as if the order had never been entered. [Citations.] A return to the *status quo ante* meant that there was no new postconviction proceeding and, hence, no need to reestablish standing." (Internal quotation marks omitted.) *Id.* ¶ 54.

¶ 37    We find *Coe* is factually distinguishable from the case at bar. Unlike the present

- 15 -

case, the defendant in *Coe* essentially sough to vacate the trial court's dismissal of his postconviction petition for want of prosecution. Further, the defendant's motion, seeking reinstatement, was timely filed (under the mailbox rule) within 30 days of the court's dismissal. As noted above, section 2-1203(a) of the Civil Code, not section 13-217, provides authority for vacating a judgment and "reinstating" a case within 30 days of its entry. See 735 ILCS 5/2-1203(a) (West 2018) ("In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion *** to vacate the judgment or for other relief."). Accordingly, *Coe* does not address factual circumstances similar to this case and does not provide authority for "reinstating" defendant's amended postconviction petition—filed pursuant to the procedure set forth in section 13-217—at the second stage of postconviction proceedings.

¶ 38        We reiterate that, because the Act "does not speak to refiling or reinstatement of claims after a [postconviction] petition is withdrawn" (*Simms*, 2018 IL 122378, ¶ 46), we may apply general civil practice rules to determine the proper procedure. Section 13-217 of the Civil Code has been applied to permit the refiling of a postconviction petition within one year of a voluntary withdrawal. However, refiling under section 13-217 is not a continuation of the proceedings on the withdrawn petition but a new proceeding that is subject to the same treatment as an initial postconviction filing. Accordingly, the trial court did not err in this case in treating defendant's amended *pro se* postconviction petition as an initial filing and applying a first-stage postconviction analysis.

¶ 39        B. Propriety of the Trial Court's First-Stage Dismissal

¶ 40        On appeal, defendant alternatively argues the trial court erred by dismissing his amended *pro se* postconviction petition as frivolous and patently without merit. He contends his

petition set forth an arguable claim that both his trial counsel and his appellate counsel were ineffective for failing to challenge the trial court's reliance on an improper factor at sentencing, which resulted in the imposition of an excessive sentence.

¶ 41 As stated, the trial court may enter a first-stage dismissal of a postconviction petition that is frivolous and patently without merit. *Pendleton*, 223 Ill. 2d at 472. A postconviction petition is frivolous or patently without merit only when "the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209 (2009). "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *Id.* "Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 17. "Review of the circuit court's dismissal of a postconviction petition is *de novo*." *People v. Buffer*, 2019 IL 122327, ¶ 12, 137 N.E.3d 763.

¶ 42 Ineffective-assistance-of-counsel claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hodges*, 234 Ill. 2d at 17. Under that standard, "a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *Id.* (quoting *Strickland*, 466 U.S. at 687-88). "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.*

¶ 43 Additionally, when imposing sentence, a trial court may consider "many relevant factors, including the defendant's demeanor, habits, age, mentality, credibility, general moral

character, and social environment [citations], as well as the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant [citations]." (Emphasis and internal quotation marks omitted.) *People v. Saldivar*, 113 Ill. 2d 256, 268-69, 497 N.E.2d 1138, 1143 (1986). The consideration of an improper factor in aggravation is an abuse of discretion. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 55, 141 N.E.3d 320. Ultimately, however, "there is a strong presumption that the trial court's sentence was based on proper legal reasoning, and a reviewing court should consider the record as a whole rather than a few isolated statements." *Id.*

¶ 44        Here, defendant argues that at sentencing the trial court improperly relied on a fact that was not in evidence, by asserting he "committed a fraud on the court by seeking to adopt S.H. *** before the sexual abuse came to light." Defendant argues his trial counsel was ineffective for failing to object to the court's consideration of this factor. Additionally, he contends his appellate counsel was ineffective for failing to raise the issue on direct appeal and challenge trial counsel's failure to preserve the issue by raising it in a postsentencing motion to reconsider. To support his contentions, defendant points to the following comments the court made during his initial sentencing hearing in February 2004:

> "The Defendant, as step-father, stood in a position of trust toward the children. He sought to extend his role in their lives and increase his dominant position and authority over them by initiating adoption proceedings before the sexual abuse came to light. In so doing, the Defendant used the laws and courts of the State of Illinois to perpetrate a fraud. It is further confirmation, if any be needed, of the depth of cynicism, audacity, and immoral behavior."

Defendant further notes that, at his resentencing in July 2007, the court essentially adopted its

findings at the original sentencing hearing, stating as follows:

> "The Court made lengthy comments at the time that [defendant] was originally sentenced. I am not going to repeat those comments. I don't think that is necessary. I do not believe that any of those comments warrant changing either. The comments that the Court made at that time concerning factors in aggravation and mitigation, concerning the circumstances of the offenses and concerning— anything that might be relevant to sentencing are as valid today as they were then, and I don't think that either side has pointed out any circumstances or argued to the contrary."

¶ 45    Here, we disagree with defendant that the above comments arguably show ineffective assistance of counsel based on the failure to challenge the trial court's consideration of an improper sentencing factor. Rather, the record reflects the court's proper consideration of defendant's character and the nature and circumstances of his offenses, including the nature and extent of his relationship with S.H.

¶ 46    Evidence at defendant's trial showed that he sexually abused S.H. while in a position of authority over her as her stepfather. The underlying facts showed defendant, who acted in concert with S.H.'s mother, isolated S.H. and her younger sibling, showed the minors pornographic images of other children being sexually abused, allowed the minors to view him engaged in sexual activity, and repeatedly sexually abused S.H. As noted by the trial court, that sexual abuse involved physical force by defendant and multiple forms of penetration. The evidence further showed that, shortly following the time period when the acts of abuse were alleged to have occurred, defendant legally adopted S.H. Defendant himself testified at his trial regarding the occurrence and date of the adoption.

¶ 47    The trial court's consideration of the above factual circumstances was permissible. We find no error in its determination that defendant's action in becoming S.H.'s adoptive father would have placed him in a position of greater authority over her. Moreover, it was not improper for the court to characterize defendant's action in legally adopting the nine-year-old child he was sexually abusing as deceitful and dishonest behavior. Defendant's actions were the opposite of the kind exhibited by a fit parent, concerned with the welfare and well-being of his child. Had they been revealed earlier, defendant's adoption of S.H. would certainly not have been permitted.

¶ 48    Additionally, even if we were to find that the trial court considered an improper factor, which we do not, defendant was not arguably prejudiced. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* We note that "[a] trial court's reliance upon an improper factor does not always necessitate remandment for resentencing." *People v. Beals*, 162 Ill. 2d 497, 509, 643 N.E.2d 789, 795 (1994). "Where it can be determined from the record that the weight placed upon the improperly considered aggravating factor was insignificant and that it did not lead to a greater sentence, remandment is not required." *Id.* at 509-10.

¶ 49    In this instance, the trial court's comments regarding "fraud" and defendant's adoption of S.H. were brief. Further, the weight given to that factor appears to be insignificant when the court's comments at sentencing are viewed in their entirety. It is not arguable that the result of either defendant's resentencing hearing or his direct appeal would have been different if challenges had been raised regarding the court's alleged improper comments.

¶ 50    Accordingly, the record on appeal fails to support defendant's contention that the

trial court relied on an improper aggravating factor when imposing his sentence. As a result, it is not arguable that his defense counsel was ineffective for failing to raise the issue. Similarly, it is also not arguable that defendant's appellate counsel was ineffective for not raising the issue or challenging trial counsel's failure to preserve the issue for direct appeal through the filing of a postsentencing motion to reconsider defendant's sentence. We agree with the trial court's determination that defendant's amended *pro se* postconviction petition was frivolous and patently without merit.

¶ 51                                  III. CONCLUSION

¶ 52          For the reasons stated, we affirm the trial court's judgment.

¶ 53          Affirmed.

2022 IL App (4th) 210001

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Clark County, No. 03-CF-68; the Hon. Tracy W. Resch, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Simone A. Patras, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Kyle P. Hutson, State's Attorney, of Marshall (Patrick Delfino, David J. Robinson, and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |