NOTICE

Decision filed 05/17/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220765-U

NO. 5-22-0765

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 11-CF-379 |
| | ) | |
| STEVEN E. TAYLOR, | ) | Honorable |
| | ) | Ronda D. Holliman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Vaughan and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's order denying defendant leave to file a successive postconviction petition, where defendant failed to establish cause for his failure to raise his proportionate penalties claim in his initial postconviction petition.

¶ 2    Defendant, Steven E. Taylor, appeals the Champaign County circuit court's order denying his motion for leave to file a successive petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, defendant argues that he demonstrated cause and prejudice to file a successive postconviction petition claim that his *de facto* life sentence, imposed for offenses he committed at the age of 19, violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to him. We affirm.

¶ 3                                        I. Background

¶ 4    On March 11, 2011, the State charged defendant by information with two counts of home

1

invasion (720 ILCS 5/12-11(a)(1), (a)(2) (West 2010) (text of section effective until July 1, 2011)) and one count of armed robbery (*id.* § 18-2(a)(1)). On March 25, 2011, the State additionally charged defendant by information with one count of aggravated criminal sexual abuse of a person over the age of 60 years (*id.* § 12-16(a)(3) (text of section effective until July 1, 2011)). Prior to trial, the State dismissed one of the counts of home invasion.

¶ 5    In June 2011, the circuit court approved the appointment of Dr. Lawrence Jeckel to perform a fitness evaluation of defendant at the request of defendant's trial counsel. Dr. Jeckel evaluated defendant and prepared a report indicating that he found defendant fit to stand trial. In so finding, Dr. Jeckel reviewed defendant's 2011 correctional records, a 2008 emergency room visit, and a 2002 psychiatric admission record.

¶ 6    On August 29, 2011, the circuit court found defendant fit to stand trial based on Dr. Jeckel's report. Shortly after the hearing, trial counsel requested that the court issue orders releasing records from multiple facilities where defendant received treatment. The court granted the request but rescinded the orders after trial counsel failed to give notice to the treatment facilities. At a subsequent hearing, trial counsel indicated that he would have defendant sign releases for the treatment records.

¶ 7    In October 2011, the circuit court appointed Dr. Jeckel and Dr. Albert Lo to evaluate defendant pursuant to his defense of insanity. Trial counsel subsequently withdrew the insanity defense.

¶ 8    On December 5, 2011, the matter proceeded to a jury trial. The trial evidence generally established that on January 21, 2011, defendant, at age 19, knocked on the door of a 79-year-old woman and asked for someone named "Jack Brown." The woman directed defendant to a house down the street, but defendant followed the woman inside her home. Defendant held a knife or

blade in his hand and requested money from the woman. After taking the woman's money, defendant demanded the woman's jewelry. Defendant then directed the woman to her bedroom, where he took additional money and other valuables. Defendant then directed the woman to remove her clothing and the woman complied. Defendant rubbed his penis between the woman's breasts four or five times. After defendant discovered a concealed cell phone on the woman's person, he struck her on the left side of her face and took the phone. Defendant tied the woman's hands with a telephone cord and pushed her into a closet. Defendant shut the closet door and pushed a heavy cabinet in front of the door to prevent the woman's escape. The woman suffered fractures of the orbital socket, maxilla bone, and zygomatic arch, which required extensive surgery.

¶ 9    On December 6, 2011, following deliberations, the jury found defendant guilty on all counts. The jury also signed special verdict forms finding that the victim was over the age of 60.

¶ 10    On January 9, 2012, the circuit court held a sentencing hearing. At the hearing, defendant's mother testified that defendant had multiple mental health diagnoses, including bipolar disorder. Defendant's mother also testified that defendant was transferred between many different foster homes and facilities due to behavioral issues. Defendant's mother testified that defendant committed the offenses at issue approximately one year after his release from the last treatment facility. Defendant's sister testified that defendant was a hyper child who had trouble sitting down. Defendant's sister explained that defendant took medication for hyperactivity, which made him sad. Defendant's sister testified that defendant had been in multiple treatment facilities. Defendant's former court-appointed special advocate testified that defendant had a bad experience in foster care, in that he never stayed in one place long enough to get settled. The advocate believed that defendant had multiple personalities.

¶ 11    The presentence investigation (PSI) report indicated that defendant had been raised by his

grandmother until she died when defendant was 13 years old. Defendant's mother was incarcerated and his father's parental rights had been terminated. From age 13 to age 18, defendant was a ward of the Illinois Department of Children and Family Services (DCFS) and resided in multiple foster homes. Defendant was also sent to various treatment facilities and took various medications for mental health issues in that time.

¶ 12    In allocution, defendant apologized to the victim, stated that he loved his family, and requested a chance to be rehabilitated. Counsel for defendant argued for a minimal sentence, noting defendant's mental health history and difficult upbringing. Counsel asserted that defendant could be rehabilitated. After considering the parties' arguments, the circuit court sentenced defendant to consecutive prison terms of 45 years for home invasion, 40 years for armed robbery, and 7 years for aggravated criminal sexual abuse.

¶ 13    Defendant filed a direct appeal, arguing that his aggregate sentence of 92 years in prison was excessive. The Fourth District affirmed defendant's sentence. *People v. Taylor*, 2013 IL App (4th) 120255-U.[1]

¶ 14    On February 11, 2014, defendant filed a *pro se* postconviction petition, asserting, *inter alia*, claims of ineffective assistance of trial and appellate counsel. The circuit court appointed counsel to represent defendant.

¶ 15    On July 8, 2014, postconviction counsel filed an amended postconviction petition. In the amended petition, postconviction counsel alleged a claim of ineffective assistance of trial counsel under *United States v. Cronic*, 466 U.S. 648 (1984). In support, postconviction counsel alleged that trial counsel failed to act as a true advocate by failing to file a motion to suppress DNA

---

[1]We note that the trial proceedings took place under the jurisdiction of the Fourth District. After the Fourth District issued decisions on direct appeal, Champaign County was redistricted from the Fourth District to the Fifth District. Ill. S. Ct., M.R. 30858 (eff. Dec. 8, 2021).

evidence, failing to understand the mental health issues in criminal matters, and failing to understand the DNA evidence that was presented to the jury. Regarding trial counsel's failure to understand the mental health issues, postconviction counsel asserted that trial counsel failed to obtain defendant's mental health records to raise an insanity defense as a result of counsel's lack of understanding of the process to obtain such records. However, postconviction counsel acknowledged that trial counsel may have used the process as a delay tactic. Postconviction counsel also alleged the same claims of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). Postconviction counsel alleged that trial counsel should have known the process for obtaining mental health records "in a timely fashion." Postconviction counsel further alleged as follows:

> "The prejudice to Defendant is that obtaining the mental health record[s] earlier in the matter (and Defendant is uncertain whether [trial counsel] actually received and reviewed them) would a) have assisted counsel in filing a motion to suppress in that perhaps Defendant was unable to understand the officers when they were seeking consent for a DNA sample and b) could have been used to cross-examine the victim about whether the perpetrator's conduct was consistent with that of a person suffering from a mental illness."

¶ 16    The State filed a motion to dismiss defendant's amended postconviction petition. In support, the State attached Dr. Jeckel's report. Postconviction counsel filed a response, again arguing prejudice based on trial counsel's failure to obtain defendant's mental health records earlier. The circuit court denied the State's motion to dismiss.

¶ 17    In January 2015, the circuit court held an evidentiary hearing on defendant's amended postconviction petition. Defendant testified on his own behalf. Defendant testified that at a young age, he was diagnosed with bipolar disorder, schizophrenia, and depression. Defendant testified

5

that he was placed in the Guardian Angel home and the Alternative Behavior Treatment Center due to his mental health issues. Defendant advised trial counsel of his mental health history and requested that counsel obtain his mental health records. Defendant claimed he signed paperwork to assist trial counsel in obtaining his records. Defendant claimed he discussed the insanity defense with trial counsel. Defendant and trial counsel also discussed the findings of Drs. Jeckel and Lo that he was sane at the time of the offenses. Defendant testified that he was aware trial counsel withdrew his insanity defense.

¶ 18    The State presented the testimony of defendant's trial counsel, Alfred Ivy. Ivy testified that he and defendant discussed defendant's mental health history. Ivy admitted that he was unable to obtain certain mental health records for defendant. Ivy understood that defendant had significant mental health issues, but Ivy was not "privy to exactly what all those issues were." After learning that both Drs. Jeckel and Lo found defendant sane at the time he committed the offenses, Ivy and defendant abandoned the insanity defense. They, instead, planned to use defendant's mental health at sentencing. Ivy testified that the delay in obtaining defendant's mental health records was a delay tactic, given the age and frailty of the victim.

¶ 19    On March 27, 2015, the circuit court entered a written order denying defendant's amended postconviction petition. In doing so, the court found that Ivy's failure to obtain defendant's mental health records in a timely fashion was trial strategy. The court further noted that defendant did not present any mental health records to support his claim. The court additionally noted that defendant's mental health history was considered and documented in Dr. Jeckel's report. The court noted that evidence of defendant's mental health was presented at the sentencing hearing and that Ivy argued defendant's mental health history as mitigating evidence.

¶ 20    Defendant appealed, arguing that postconviction counsel "failed to make the amendments

6

necessary to present [his] claim of ineffective assistance of trial counsel based on his mental health records." *People v. Taylor*, 2017 IL App (4th) 150236-U, ¶ 24. Aside from improper fines, the Fourth District affirmed the circuit court's order denying defendant's amended postconviction petition. *Id.* ¶¶ 24-29. The Illinois Supreme Court denied defendant's petition for leave to appeal on September 27, 2017. *People v. Taylor*, No. 122404 (Ill. Sept. 27, 2017).

¶ 21    On May 10, 2022, defendant filed a motion for leave to file a successive petition for postconviction relief. Defendant argued that his "92 year *de facto* natural life sentence violate[d] the Proportionate Penalties clause of The Illinois Constitution and [was] unconstitutional as applied to [him]." Defendant, citing *People v. Edwards*, 2012 IL 111711, ¶¶ 22-23, acknowledged that he was required to establish "cause and prejudice" for his failure to raise the claim earlier. As to cause, defendant alleged that he had newly discovered evidence of the attendant characteristics of his youth. Specifically, his records from DCFS, which he claimed were unavailable to him at his sentencing hearing and at the time he filed his first postconviction petition. Defendant claimed the records were "unavailable to him sooner in the exercise of due diligence." According to defendant, the records did not become available to him until January 5, 2022, when he received them from the "closed file information and search service" program of DCFS. Defendant asserted that the circuit court had not previously considered the records, and previously stated that no mental health records had been submitted in support of defendant's claim. Defendant attached as exhibits to his motion the records and his own affidavit detailing his recent receipt of the records.

¶ 22    Defendant also alleged that the evolving science on juvenile maturity and brain development in emerging adults found in *Miller v. Alabama*, 567 U.S. 460 (2012), provided cause for the filing. In support, defendant attached two out-of-state trial court orders detailing Dr. Laurence Steinberg's and Dr. Erin Bigler's testimony and opinions on the subject of emerging

7

adult brain science. Defendant alleged that he lacked the funds to hire an expert to provide a notarized affidavit on the issue due to his incarceration.

¶ 23 As to prejudice, defendant alleged that the sentencing court failed to consider the DCFS records or his youth attendant characteristics in imposing the 92-year sentence. Defendant maintained that the sentencing court would have imposed a lesser sentence had the court considered such evidence.

¶ 24 On October 26, 2022, the circuit court issued a written order denying defendant leave to file a successive postconviction petition. The court found that defendant failed to establish cause for the filing, noting that defendant failed "to identify an objective factor that impeded his ability to obtain these DCFS records prior to the evidentiary hearing on January 14, 2015[,] regarding his initial post-conviction petition." The court noted that defendant, instead, merely made "the conclusory statement that the 'records were unavailable to him sooner in the exercise of due diligence' without providing any basis or explanation as to how he exercised due diligence in attempting to obtain these records in advance of the evidentiary hearing." Thus, the court found that defendant failed to establish cause as to the DCFS records.

¶ 25 As to the evidence regarding the evolving science on juvenile maturity and brain development in young adults, the circuit court acknowledged the United States Supreme Court's decision in *Miller*, "as well as subsequent decisions expanding on protections afforded to young adult offenders, to demonstrate that his sentence violated the proportionate penalties clause of the Illinois Constitution and [was] unconstitutional as applied to him." The court, citing *People v. Wimberly*, 2022 IL App (1st) 211464, ¶ 9, and *People v. Dorsey*, 2021 IL 123010, noted that a defendant cannot establish cause for failing to raise a claim under the proportionate penalties clause earlier using recent developments in juvenile sentencing case law that were not available at the

time of the defendant's initial postconviction petition. Thus, the court found that defendant failed to establish cause as to his proportionate penalties clause claim.

¶ 26 Defendant filed a timely notice of appeal.

¶ 27                                    II. Analysis

¶ 28 On appeal, defendant argues that the circuit court erred by denying him leave to file a successive postconviction petition, where he established cause and prejudice for his constitutional claim that his *de facto* life sentence for offenses he committed at age 19 violated the proportionate penalties clause of the Illinois Constitution as applied to him. The State argues that the circuit court properly denied defendant leave to file a successive postconviction petition, where defendant failed to establish cause to challenge the constitutionality of his sentence. We agree with the State.

¶ 29 The Post-Conviction Hearing Act (Act) provides defendants with a procedural mechanism to raise claims of violations of their constitutional rights. *People v. Robinson*, 2020 IL 123849, ¶ 42. The Act provides for a collateral attack on a final judgment and does not substitute for a direct appeal. *Id.* The Act anticipates the filing of only one postconviction petition, and a defendant forfeits any claim not presented in the initial petition. 725 ILCS 5/122-1(f) (West 2016); *People v. Allen*, 2019 IL App (1st) 162985, ¶ 29. The filing of a successive postconviction petition is "highly disfavored" (*People v. Simms*, 2018 IL 122378, ¶ 38) and allowed only in "very limited circumstances" (*People v. Davis*, 2014 IL 115595, ¶ 14). *People v. Montanez*, 2023 IL 128740, ¶ 73. The Act provides that a defendant's claim of substantial denial of constitutional rights not raised in his original or amended postconviction petition is waived. *Id.* ¶ 74; 725 ILCS 5/122-3 (West 2020). Thus, the procedural bar of waiver, in the context of a successive postconviction petition, is not merely a principle of judicial administration but an express requirement of the Act. *Montanez*, 2023 IL 128740, ¶ 74 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)).

¶ 30    A defendant seeking to file a successive postconviction petition may obtain leave of court. *People v. Tidwell*, 236 Ill. 2d 150, 157 (2010). The bar against successive postconviction proceedings should not be relaxed unless a defendant (1) can establish "cause and prejudice" for the failure to raise the claim earlier or (2) can show actual innocence under the "fundamental miscarriage of justice" exception. *Edwards*, 2012 IL 111711, ¶¶ 22-23.

¶ 31    The cause-and-prejudice test is set out in section 122-1(f) of the Act as follows:

> "Leave of court [for filing a successive postconviction petition] may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2020).

¶ 32    A motion for leave to file a successive petition seeking postconviction relief should be denied where "it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." (Internal quotation marks omitted.) *People v. Bailey*, 2017 IL 121450, ¶ 21. It is the defendant's burden to establish a *prima facie* showing of cause and prejudice in order to be granted leave before further proceedings on his claims can follow (*id.* ¶ 24), and both elements must be satisfied for defendant to prevail. *People v. Guerrero*, 2012 IL 112020, ¶ 15. A reviewing court applies a

*de novo* standard to a trial court's denial of a motion for leave to file a successive postconviction petition. *People v. Lusby*, 2020 IL 124046, ¶ 27.

¶ 33 We note that shortly after the parties filed their respective briefs in the instant case, our supreme court issued its decision in *People v. Moore*, 2023 IL 126461. Defendant acknowledged in his briefs filed with this court that our supreme court's decision in *Moore* would address "the very issue here: whether leave to file a successive post-conviction petition should be allowed for petitioners similarly-aged as [defendant] and raising claims predicated, in part, on the brain science underpinning" the recently developing case law concerning the sentencing of juveniles. In *Moore*, our supreme court considered two consolidated appeals involving two separate defendants who were 19 years old at the time they committed their respective offenses and were sentenced to life in prison without parole. *Id.* ¶ 1. Both defendants claimed that *Miller v. Alabama*, 567 U.S. 460, 471-73 (2012), provided cause for raising new constitutional challenges to their sentences in a successive postconviction petition. *Id.* ¶ 36. Our supreme court concluded that because *Miller* did not directly apply to young adults, *Miller* did not provide cause for a young adult to raise a claim under the proportionate penalties clause of the Illinois Constitution. *Id.* ¶¶ 38, 40. Thus, our supreme court held that *Miller* did not provide cause for either defendant to file their proposed successive postconviction petitions. *Id.* ¶ 44.

¶ 34 In applying the holding of *Moore* to the present case, we conclude that *Miller* did not provide cause for the proportionate penalties challenge defendant sought to raise in his successive postconviction petition. Accordingly, defendant's reliance on *Miller* and its progeny was insufficient to establish cause for failing to raise his proportionate penalties challenge in an earlier proceeding.

11

¶ 35   We also reject defendant's allegation that his recently obtained DCFS records established cause for his failure to raise the claim in an earlier proceeding. As the State correctly notes, defendant failed to explain why the DCFS records were unavailable during his trial, direct appeal, first postconviction petition, or second appeal. As such, defendant failed to establish that the DCFS records constituted "newly discovered evidence" that provided cause for his failure to raise the claim in an earlier proceeding.

¶ 36   Because defendant failed to allege sufficient facts to make a *prima facie* showing of cause for his failure to raise the claim in a prior proceeding, the circuit court did not err by denying defendant's motion for leave to file a successive postconviction petition. In light of our determination that defendant failed to establish cause, we need not address the issue of whether defendant made a *prima facie* showing of prejudice. See *Moore*, 2023 IL 126461, ¶ 42.

¶ 37                                III. Conclusion

¶ 38   For the foregoing reasons, we affirm the order of the Champaign County circuit court.


¶ 39   Affirmed.